**NARRAGANSETT INDIAN TRIBE OF RHODE ISLAND, Plaintiff,**

v.

**Mary Jane BANFIELD, Lawrence Stanton, Walter Babcock, and Sandy McCaw, Defendants.**

**C.A. No. 02–524S.**

United States District Court, D. Rhode Island.

Nov. 19, 2003.

John F. Killoy, Esq., Wakefield, RI, for Plaintiff.

Mark T. Nugent, Esq., Michael J. Marcello, Esq., Morrison, Mahoney & Miller, Providence, RI, for Defendants.

### DECISION AND ORDER

SMITH, District Judge.

This case requires that the Court assess the applicability of the *Rooker–Feldman* doctrine to a judgment by a Rhode Island Superior Court Justice on a discovery matter in an action pending in the Rhode Island Superior Court. Finding that it lacks jurisdiction to enter "an affirmative declaration vacating the order of the Superior Court," Complaint for Declaratory Judgment and Injunctive Relief, ¶ 31, the Court grants the Defendants' Motion to Dismiss and denies as futile Plaintiff's Motion to Amend its Complaint.

### I.   *Background and Posture*

The dispute arises out of a 1999 Rhode Island state court action for libel and slander filed by several non-parties to this action including Matthew Thomas ("Thomas"), the Chief Sachem of the Narragansett Indian Tribe ("Tribe"), against all of the Defendants in this action. *See Thomas, et al. v. Banfield, et al.,* C.A. No. WC1999–0460. All parties in the state court action are either appointed or elected officials of, or otherwise work for, the Tribe. In the state court action Thomas claims that the defendants, all members of the Narragansett Indian Wetuomuck Housing Authority, slandered and libeled them in certain Narragansett Indian Housing Commission reports discussing the failure of the Tribe to obtain designation as a Federal Department of Housing and Urban Development low-income housing project.

A discovery dispute arose in the state court proceeding when the defendants sought the production of copies of internal tribal documents including Tribal Assembly and Tribal Council Minutes and Agendas. The defendants issued a subpoena to the Tribe's keeper of records requesting the same, and the Tribe, despite the fact that it is not a party to the state action, filed an objection and motion to quash in state court, asserting that the Tribe was immune from a non-party subpoena and

that the state court lacked jurisdiction over internal tribal affairs. The Superior Court, Gibney, J., granted the Tribe's motion to quash, finding that the Tribe had not waived its sovereign immunity.

The state court defendants then noticed the deposition of Matthew Thomas and sought to ask him questions relating to some of the same tribal documents sought by the written discovery. Thomas refused to answer any questions about documents that were the subject of the motion to quash. Defendants in the state court action then filed a motion to compel answers, which the Tribe opposed on sovereign immunity grounds. On October 21, 2002, the Superior Court, Gagnon, J., granted defendants' motion to compel answers on the basis that Thomas, as a plaintiff in a pending suit, had waived any sovereign immunity that he possessed as Sachem. Plaintiffs in the state court action filed no objection or appeal of that order.[1]

Instead, the Tribe filed this action in federal court seeking relief from Justice Gagnon's order. In this action (filed December 12, 2002), the Tribe seeks a declaration vacating the Superior Court's order finding a waiver of sovereign immunity as to Thomas. Specifically, the Tribe seeks "an affirmative declaration affirming the sovereign immunity of the Tribe," (Count I) and for this Court to enjoin Thomas' deposition from proceeding with respect to any "internal matters or records of the Narragansett Indian Tribe" (Count II).

Defendants move to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) or, in the alternative, ask that the Court abstain from hearing this case. The Court heard oral argument on July 3, 2003. On August 8, 2003, the Tribe moved to amend its Complaint pursuant to Fed.R.Civ.P. 15(a) to add the Justices of the Rhode Island Superior Court as defendants, believing them to be indispensable parties under Fed.R.Civ.P. 19.

## II. Analysis

### A. Rooker–Feldman

■ The sole proffered basis for Defendants' Rule 12(b)(1) motion is that the *Rooker–Feldman* doctrine prevents this Court from reviewing final judgments in state court proceedings. *See Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir.2003) (the *Rooker–Feldman* doctrine is "at least quasi-jurisdictional"). The *Rooker–Feldman* doctrine[2] prohibits federal district and circuit courts (but not the U.S. Supreme Court) from reviewing state court orders and judgments. *See id; Pascoag Reservoir & Dam, LLC v. Rhode Island*, 217 F.Supp.2d 206, 214 (D.R.I. 2002).

■ Even if a claim were not presented to a state court, the *Rooker–Feldman* doctrine " 'forecloses lower federal court jurisdiction over claims that are "inextricably intertwined" with the claims adjudicated in a state court.' " *Id.* at 215 (citing *Picard v. Members of the Employee Ret. Bd.*, 275 F.3d 139, 145 (1st Cir.2001)). Senior Judge Lagueux of this Court has observed that

"[i]nextricably intertwined" is defined as a situation where the federal claim can only succeed if the state court claim

---

1. The reasons for the Tribe's decision not to proceed with the usual course of state appellate procedural review were not explained and remain a mystery.

2. The *Rooker–Feldman* doctrine takes its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and, six decades later, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

fails. In other words, the federal court would have to reverse the state court for the federal claim to prevail.

*Id.* (citing *Picard,* 275 F.3d at 145).

Defendants liken this case to *Weekly v. Morrow,* 204 F.3d 613 (5th Cir.2000), wherein the Fifth Circuit considered whether a federal district court had subject matter jurisdiction to enjoin the enforcement of a Louisiana state workers' compensation court discovery order, which had previously been appealed (and affirmed) at the state appellate and supreme courts. Although the federal district court dismissed the case under the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), believing that it had jurisdiction and then exercising its discretion not to hear the case, the Fifth Circuit disagreed, dismissing the case instead on *Rooker–Feldman* grounds:

> The Supreme Court has definitively established, in what has become known as the *Rooker–Feldman* doctrine, that "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." "If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court."
>
> ... [T]he district court did not have jurisdiction to hear Weekly's claim, even to the preliminary stage of considering prudential abstention under *Younger.*

204 F.3d at 615 (internal citations omitted).

Plaintiff counters with *Kiowa Indian Tribe of Oklahoma v. Hoover,* 150 F.3d 1163 (10th Cir.1998). There, an individual and a corporation had obtained two Oklahoma state court judgments against the Kiowa Indian Tribe, and had subsequently begun enforcement proceedings. In order

to block those enforcement proceedings, the Kiowa Tribe filed a section 1983 action in federal court challenging the use of state court process to seize tribal assets in satisfaction of the state court judgments. The court held that the enforcement proceedings (and the section 1983 challenge) were "separable from and collateral to the question of whether a judgment may be entered in the first instance against an Indian tribe, even though the answers to both questions turn on the reach of tribal sovereign immunity." *Id.* at 1170. The court explained:

> Although the Tribe's § 1983 action necessarily implicated the state court judgments ... on its face the Tribe's complaint clearly states a separate and distinct claim challenging the post-judgment enforcement procedures ordered by the state courts, *i.e.,* the ongoing seizure of Kiowa's tax revenues by garnishment and creditor's bill, and the enjoining of Kiowa from enforcing its tribal laws.... [T]he underlying judgment against an Indian tribe and the question of available remedies are not "inextricably intertwined."

*Id.* at 1171. Plaintiff argues that "here as in *Kiowa,* the Narragansett Indian Tribe's claim of sovereign immunity is wholly collateral [to] and separate from the state court plaintiffs' claims for libel and slander." Pl. Mem. at 14.

█ But that dog won't hunt. Plaintiffs in the state court action resisted proceeding with Thomas' deposition based on the doctrine of sovereign immunity. That is *precisely* the issue on which the Superior Court ruled against Thomas, et al. In order for this Court to grant the relief that the Tribe seeks here, it would have to reverse the decision of the Superior Court respecting Thomas' waiver of sovereign immunity as Chief Sachem. Therefore, the relief sought is not collateral to, but is

instead the very same as, that which was decided against plaintiffs in state court.[3]

Plaintiff also purports to rely on *Bowen v. Doyle*, 880 F.Supp. 99 (W.D.N.Y.1995). There, the president of the Seneca Nation brought a section 1983 action to enjoin several judges of New York's state court from asserting and exercising jurisdiction over an action that was already before them, which dealt with various internal tribal matters and tribal law. Defendants contended that the federal court was barred from enjoining the state court action because the state court had already decided the issue of its jurisdiction over internal tribal matters, and therefore the *Rooker–Feldman* doctrine barred federal court intervention. The court disagreed, finding that

> *Rooker/Feldman* ... is concerned with the impact of a federal action on a *final* state court judgment....
>
> ... This case affects a pending state court proceeding—the very continuation of which, in and of itself, directly and impermissibly interferes with an Indian tribe's treaty-protected rights of self-government and sovereignty. This Court's authority to proceed with this suit does not implicate any state interest in a state court's final judgment as protected by *Rooker/Feldman*.
>
> The *Rooker/Feldman* doctrine is not ... a broad rule that deprives federal courts of jurisdiction whenever a state

court has issued any order in a pending suit. To the contrary ... [it] only preclude[s] federal district court jurisdiction where the suit is in fact a collateral attack on a final state court judgment. *Id.* at 133 (citations omitted) (emphasis in original).

The *Bowen* district court's conclusion with respect to *Rooker–Feldman's* requirement of a "final state court judgment" has not found wide endorsement.[4] In fact, the weight of the authority is to the contrary. *See, e.g., Weekly*, 204 F.3d at 615; *Moccio v. New York State Office of Ct. Admin.*, 95 F.3d 195, 199–200 (2nd Cir.1996) (the *Rooker–Feldman* doctrine is at least as broad as the principles of *res judicata;* it may extend beyond *res judicata*, escaping reliance on state preclusion principles and extending to state dispositions that would not count as rulings "on the merits" for preclusion purposes); *Richardson v. District of Columbia Court of Appeals*, 83 F.3d 1513, 1515–1516 (D.C.Cir.1996) (lower federal courts no more have jurisdiction to review interlocutory state judgments than jurisdiction to review final state judgments); *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n. 1 (8th Cir.1995) ("We note that *Rooker–Feldman* is broader than claim and issue preclusion because it does not depend on a final judgment on the merits."); *Pascoag*, 217 F.Supp.2d at 214 ("a federal district court should not review

---

**3.** The First Circuit, in an analogous context, has distinguished *Kiowa Tribe* for similar reasons. *See Penobscot Nation v. Georgia–Pacific Corp.*, 254 F.3d 317, 324 (1st Cir.2001) ("Whether *Kiowa Tribe* was rightly decided or not, it is completely distinguishable. The Tenth Circuit viewed the ongoing state garnishment proceeding, under attack in the section 1983 action, as 'separable from and collateral to' the state-court final judgment against the Kiowa Tribe. Here, no such separation exists: the Tribes' theory is that the internal affairs limitation affords complete protection for all the documents sought; the

final judgment of the Maine Supreme Judicial Court decided precisely this issue but held that some of the documents were protected and others were not[.] Certainly, nothing in *this* state decision is so implausible as to suggest the need for independent federal reexamination.") (internal citations omitted) (emphasis in original).

**4.** Although *Bowen* was affirmed by the Second Circuit, 230 F.3d 525 (2nd Cir.2000), the district court's conclusions regarding the *Rooker–Feldman* doctrine did not form part of that decision.

*issues* already determined by a state court") (emphasis supplied).

Furthermore, *Bowen* is distinguishable because the underlying subject matter of the New York state court action involved matters of internal Seneca Nation tribal governance and sovereignty. *See Bowen,* 880 F.Supp. at 110. The state court case that forms the predicate to the present lawsuit is an action for libel and slander, two claims undisputably founded in Rhode Island common law.

The *Rooker–Feldman* doctrine is squarely applicable to this case; the relief sought in this action is nothing less than an outright reversal and nullification of the discovery order of the Superior Court. Such a direct attack, under the circumstances of this case, is jurisdictionally impermissible.[5]

### B. *Plaintiff's Motion to Amend the Complaint*

Where, as here, an action is of relatively recent vintage, the denial of a motion to amend on the ground of futility "is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Hatch v. Dep't for Children, Youth & Their Families,* 274 F.3d 12, 19 (1st Cir. 2001). "In this situation, amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." *Id.*

■ The sum and substance of the Tribe's Motion to Amend aims to join the

Justices of the Rhode Island Superior Court as defendants, in the belief that they are indispensable parties to this action because it is they that oversee the discovery in the state court action. But even if the Court were to permit the amendment, that would not vitiate in any way the operation of the *Rooker–Feldman* doctrine, and the jurisdictional infirmity discussed above would still exist. Therefore, granting an amendment to add these defendants would be utterly futile, and therefore must be denied.

### III. *Conclusion*

For the foregoing reasons, the Defendants' Motion to Dismiss the Complaint for lack of subject matter jurisdiction is GRANTED;[6] and the Plaintiff's Motion to Amend Its Complaint is DENIED.

---

5. This is so notwithstanding the fact that the Tribe was technically not a party to the state court action. The Supreme Court in *Johnson v. De Grandy,* 512 U.S. 997, 1004–1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) held that because a non-party to a state suit cannot seek Supreme Court review of a state court decision, it is therefore free to proceed in federal court so long as it does not launch a

direct attack on the state judgment. *See id.* This, in fact, is a direct attack on the state court judgment.

6. Because the Court disposes of the case on *Rooker–Feldman* doctrine grounds, it need not consider Defendants' alternative abstention argument.