United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 29, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-30409

UNION PLANTERS BANK NATIONAL ASSOCIATION,

Plaintiff — Intervenor Defendant — Appellee,

versus

TARIQ MAURICE SALIH, individually and as administrator of the succession of Canty,

Intervenor Plaintiff — Appellant,

versus

JOHN A. GAVEL, JR.,

Defendant — Intervenor Defendant — Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
(No. 02-CV-1224-T)

Before JONES, WIENER, and PRADO, Circuit Judges.

WIENER, Circuit Judge:

In this appeal, we are asked to determine whether a federal district court can enjoin the production of information ordered produced by a Louisiana state court's subpoena duces tecum. Because the Rooker-Feldman doctrine forecloses federal subject matter jurisdiction in this case, we vacate the judgment of the district court and remand with instructions to dismiss this action

in its entirety.

## I. FACTS & PROCEEDINGS

In January 2001, the Intervenor Plaintiff—Appellant Tariq Salih sued the Plaintiff—Intervenor Defendant—Appellee Union Planters Bank National Association ("UPB" or "Union Planters") in Louisiana state court. Salih's putative class-action complaint alleged that UPB violated Louisiana law by engaging in "forced-placement" of flood insurance, causing UPB's borrowers to pay excessive insurance premiums. Specifically, Salih alleged that UPB regularly required its borrowers to carry flood insurance in an amount greater than that required by law and as specified in the mortgage agreements securing UPB's underlying loans. Salih asserted that instead of arranging for low-cost flood insurance through the pool of insurers approved by the Federal Emergency Management Agency, UPB force-placed insurance coverage through WNC Insurance Services, Inc. ("WNC"), a California-based third-party "surplus line" insurance broker. At all relevant times, the Defendant—Intervenor Defendant—Appellee John A. Gavel, Jr. was WNC's agent in Louisiana.

In early 2002, at Salih's request, the clerk of the subject state court issued third-party deposition and document subpoenas to WNC and Gavel. The subpoenas sought, inter alia, the names and addresses of UPB's Louisiana borrowers whose flood insurance had been issued through WNC. As respondents to the subpoena, WNC and Gavel filed a joint motion for a protective order and to quash the

2

subpoenas (the "Motion to Quash"). They argued that their production of the information sought by Salih would (1) violate La. Rev. Stat. § 6:333, a state statute that regulates the disclosure by banks of their customer's financial records and (2) run afoul of the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801, et seq. (2000) (the "GLBA").[1] UPB filed no formal pleading to join or otherwise endorse the Motion to Quash, but at oral argument, counsel for UPB voiced support for it, citing the GLBA as controlling authority.

The Louisiana trial court denied the Motion to Quash, but limited the scope of the document subpoena. WNC and Gavel jointly filed an emergency application for supervisory writs to the cognizant Louisiana Court of Appeal. In their writ application, WNC and Gavel relied on Louisiana law and the GLBA as support for their argument that Salih's subpoena "call[ed] for disclosure of information about loan defaults that borrowers would likely not want Union Planters or anyone else to disclose."[2] The Louisiana appellate court quashed the subpoena directed to WNC, but denied

---

[1] For itself, WNC also challenged the subpoena on the alternative ground that, because Louisiana's long-arm statute does not extend the subpoena power of Louisiana courts beyond state lines, WNC could not, as a non-resident third party, be forced to produce documents at a deposition in Louisiana. See Phillips Petroleum Co. v. OKC Ltd. P'ship, 634 So. 2d 1186, 1188 (La. 1994) ("Whereas the long-arm statute extends Louisiana's personal jurisdiction over persons or legal entities beyond Louisiana's borders, there is no similar authority for extending the subpoena power of a Louisiana court beyond state lines to command in-state attendance of nonresident nonparty witnesses.").

[2] Emphasis in original.

3

such relief for Gavel. No party sought review of this ruling by the Louisiana Supreme Court, and the trial court further modified the subpoena to clarify what Gavel was required to produce. Relying on the GLBA, UPB then filed the instant action in the district court to obtain temporary and permanent injunctive relief, seeking specifically to restrain Gavel from disclosing the information that he was ordered to produce pursuant to the modified state court subpoena.

After a hearing, the district court issued a preliminary injunction prohibiting Gavel "<u>only</u> from disclosing documents, and/or information, as set forth in the modified subpoena, and subsequent court clarifications, which would violate the GLBA," and prohibiting Salih "from taking any action in the state court which would render this [federal district] court's order ineffective or jeopardize the parties who were directed to comply with it."[3] After further argument and another hearing, the district court made the preliminary injunction permanent.[4] Salih timely filed a notice of appeal.

---

[3] <u>Union Planters Bank, N.A. v. Gavel</u>, No. Civ. A. 02-1224, 2003 WL 1193671, *1-2 (E.D. La. Mar. 12, 2003) (unpublished) (emphasis in original).

[4] <u>See id.</u> at *9. The district court ruled that "neither <u>res judicata</u>, nor abstention bars the injunctive relief sought by Union Planters under the circumstances" because the district court determined that "Union Planters, at no time, had a full and fair opportunity to have its position considered as it was not a direct party-in-interest to those proceedings involving the subpoena issued to Gavel." <u>Id.</u> at *5-6.

4

## II.  ANALYSIS

A.  STANDARD OF REVIEW

"We exercise plenary, de novo review of a district court's assumption of subject matter jurisdiction."[5]

B.  SUBJECT MATTER JURISDICTION AND THE ROOKER-FELDMAN DOCTRINE

Salih did not specifically raise Rooker-Feldman on appeal until his reply brief, but federal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte, even on appeal.[6]  As an initial matter, we must analyze the nature of the Louisiana state court discovery order through the lens of the Rooker-Feldman doctrine.  "[T]he Rooker-Feldman doctrine only applies insofar as a state court judgment merits full faith and credit."[7]  We must therefore consider how the Louisiana courts would treat the discovery order at issue.  When we do so, we encounter two sequential questions: (1) Would Louisiana courts give preclusive effect to the order requiring Gavel to produce the requested information; (2) if so, is UPB — which is not the named

---

[5] Hoskins v. Bekins Van Lines, 343 F.3d 769, 772 (5th Cir. 2003) (quoting Local 1351 Int'l Longshoremens Ass'n v. Sea-Land Serv., Inc., 214 F.3d 566, 569 (5th Cir. 2000)).

[6] Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); Weekly v. Morrow, 204 F.3d 613, 615 & n.6 (5th Cir. 2000).

[7] Richard v. Hoechst Celanese Chem. Group, Inc., 355 F.3d 345, 350 (5th Cir. 2003) (citing Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 373 (1996); In re Lease Oil Antitrust Litigation, 200 F.3d 317, 319 n.1, 320 (5th Cir. 2000); Gauthier v. Continental Diving Svcs., Inc., 831 F.2d 559, 561 (5th Cir. 1987)).

respondent to the subpoena — precluded from mounting a collateral attack in federal court against enforcement of the order?

1. **The Discovery Order Was a "Final" State Court Judgment.**

Under Article 2083 of the Louisiana Code of Civil Procedure ("LCCP"), "[a]n appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, [or] from an interlocutory judgment which may cause irreparable injury...."[8] LCCP Article 1841 distinguishes between interlocutory and final orders by declaring that "[a] judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment"; but "[a] judgment that determines the merits in whole or in part is a final judgment."[9] Louisiana courts have interpreted these code provisions to mean that a "ruling denying a motion to quash a subpoena duces tecum brought by a non-party to the action determines in whole the merits of this single issue between the parties.... It is, therefore, a final appealable judgment."[10]

---

[8] LA. CODE CIV. PROC. ANN. art. 2083(A) (West 2002).

[9] LA. CODE CIV. PROC. ANN. art. 1841 (West 2003).

[10] Larriviere v. Howard, 771 So. 2d 747, 750 (La. App. 3d Cir. 2000). Accord R. J. Gallagher Co. v. Lent, Inc., 361 So. 2d 1231, 1231 (La. App. 1st Cir. 1978); Berard v. American Emp. Ins. Co., 246 So. 2d 686, 687 (La. App. 1st Cir. 1970) ("The decree determines in whole the merits of the single issue between the parties to the controversy concerned. It is therefore a final judgment."). See also 3 Steven R. Plotkin, LOUISIANA CIVIL PROCEDURE 404 (West 2003); 1 Frank L. Maraist & Harry T. Lemmon, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE § 14.3(4) & n.44 (West 1999 & Supp. 2003).

6

These precepts of Louisiana law require us to deem the state court order in question to be a final judgment and accord it full faith and credit for Rooker-Feldman purposes. UPB nevertheless insists that, because WNC and Gavel did not pursue an appeal under LCCP Article 2083, but instead sought only a supervisory writ under LCCP Article 2201,[11] the trial court's order was merely interlocutory in nature, and therefore has no preclusive effect under the Rooker-Feldman doctrine. This reasoning is unpersuasive. In considering whether the collateral attack on a state court judgment in federal court is precluded by the Rooker-Feldman doctrine, the question we ask is not whether the order at issue was, in fact, appealed, but only whether the order was a "final state court judgment in a particular case" and thus was appealable.[12] The actions actually taken by WNC and Gavel —— or even UPB —— are immaterial. Full faith and credit attached by virtue of the state court's ruling on the Motion to Quash being final and appealable under Louisiana law —— regardless of whether it was actually contested through the usual procedures for state

_____

[11] LA. CODE CIV. PROC. ANN. art. 2201 (West 2002) ("Supervisory writs may be applied for and granted in accordance with the constitution and rules of the supreme court and other courts exercising appellate jurisdiction."). See generally Albert Tate, Jr., Supervisory Powers of the Louisiana Courts of Appeal, 38 TUL. L. REV. 429 (1964).

[12] Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983). See also id. at 476 (explaining that federal district courts are "without authority to review final determinations of" state appellate courts in judicial proceedings because "[r]eview of such determinations can be obtained only in this [Supreme] Court").

7

appellate review.

## 2. UPB Is Barred From Seeking Inferior Federal Court Review of the State Discovery Order on Federal Grounds.

The second issue that we must address is presented by UPB's contention that it was technically not a party to the Louisiana state court order and therefore cannot be subject to its preclusive effect.[13]  This argument is likewise without merit.  UPB was the named defendant in the state court proceedings and certainly had standing to challenge the production of information requested in the subpoena duces tecum.[14]  Indeed, the gravamen of UPB's complaint in federal court is its asserted interest under the GLBA in protecting the privacy of its customers' non-public information —— an interest that UPB contends will be violated if Gavel is allowed or required to disclose the contested information to Salih.  In contrast to cases in which the Rooker-Feldman doctrine was held not to bar federal jurisdiction because the federal plaintiff was not a party to the state court proceedings,[15] UPB was clearly in a position to seek review of a state court ruling that UPB contends

---

[13]  This was, in part, the basis for the district court's conclusion that no abstention doctrine barred UPB from presenting its GLBA challenge in federal court.  See supra note 4.

[14]  See Ouachita Nat'l Bank v. Palowsky, 554 So. 2d 108, 113 (La. App. 2d Cir. 1989) (holding that, because a bank has a clear and undisputable interest in resisting the production of its customers' records, "the bank has standing to object to the production of [those] records").

[15]  E.g., In re Erlewine, 349 F.3d 205, 210 (5th Cir. 2003); Johnson v. De Grandy, 512 U.S. 997, 1006 (1994).

was erroneously entered. The fact that UPB unilaterally chose not to join WNC and Gavel's Motion to Quash or to seek appellate remedies beyond the Louisiana Court of Appeal is of no consequence.[16] We have explained that a party collaterally attacking a state court judgment cannot circumvent Rooker-Feldman's reach by deliberately bypassing available state procedures for judicial review:

> A rejected applicant's deliberate bypass of those procedures that envisioned (ultimately) a reviewable final state-court judgment, itself under Feldman not subject to federal district-court review, should not, it would seem, entitle the applicant to a review of his constitutional claims by a federal district court that would have been unavailable to him if he had pursued his claim to final state court judgment.[17]

At bottom, UPB's contention that it was not a party to the Louisiana discovery order stands for naught in the Rooker-Feldman calculus.

C. THE STATE AND FEDERAL PROCEEDINGS WOULD BE "INEXTRICABLY INTERTWINED"

---

[16] As counsel for UPB correctly conceded at oral argument, "[i]t's possible, of course, that Union Planters or any other party could have filed an application for extraordinary writ in the [Louisiana] Supreme Court...." Indeed, UPB also had the option of filing an interlocutory appeal under LCCP Article 2083(A), which permits appeals from interlocutory judgments which may cause "irreparable injury." See supra text accompanying note 8. UPB's prayer for injunctive relief in federal court was predicated on precisely this assertion. See Union Planters Bank, 2003 WL 1193671, at *2 ("[I]t is submitted that ... Union Planters faces irreparable injury.").

[17] Thomas v. Kadish, 748 F.2d 276, 282 (5th Cir. 1984). See also Feldman, 460 U.S. at 483 n.16 ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court.").

Reduced to its essence, the Rooker-Feldman doctrine "holds that inferior federal courts do not have the power to modify or reverse state court judgments."[18]

> The Supreme Court has definitively established, in what has become known as the Rooker-Feldman doctrine, that "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." "If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court."[19]

In this case, UPB filed the instant suit in federal court to nullify the enforcement of a state discovery order that had become final and appealable. Rather than seek relief from the Louisiana Supreme Court (and if necessary from the Supreme Court of the United States by applying for a writ of certiorari), UPB asked the federal district court to act as a de facto appellate court and reverse the state courts. This is precisely what the Rooker-Feldman doctrine does not tolerate.

In Weekly v. Morrow, the federal plaintiff filed a claim in the Louisiana Office of Worker's Compensation, and his employer sought discovery of his Social Security records.[20] The plaintiff asserted a federal privacy interest in his Social Security records

---

[18] Reitnauer v. Texas Exotic Feline Found., Inc. (In re Reitnauer), 152 F.3d 341, 343 (5th Cir. 1998).

[19] Weekly, 204 F.3d at 615 (quoting Liedtke v. State Bar of Texas, 18 F.3d 315, 317 (5th Cir. 1994)).

[20] Id. at 614.

10

and objected to his employer's request for disclosure.  The administrative hearing officer assigned to his case rejected this argument and ordered the plaintiff to sign a form consenting to the disclosure.[21]  After exhausting his appellate remedies in the Louisiana state court system and unsuccessfully petitioning the Supreme Court of the United States for certiorari, the federal plaintiff "filed an action in federal district court seeking to enjoin [the administrative hearing officer] from taking any steps to enforce her disclosure order."[22]  The district court dismissed the federal suit on grounds of Younger abstention.  We affirmed, but we held that it is the Rooker-Feldman doctrine, not Younger abstention, that required affirmance of the district court's dismissal because federal courts "cannot sit as appellate courts in review of state court judgments."[23]

Consistent with our earlier decision in Weekly,[24] we reiterate that inferior federal courts are without subject matter jurisdiction under the Rooker-Feldman doctrine to enjoin the

---

[21] Id.

[22] Id.

[23] Id. at 615-16.

[24] Our holding also comports with Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026 (9th Cir. 2001), and Narragansett Indian Tribe v. Banfield, 294 F. Supp. 2d 169 (D.R.I. 2003).  Both cases held that the Rooker-Feldman doctrine foreclosed district court jurisdiction over federal suits in which the federal plaintiffs effectively sought to reverse and nullify state court discovery orders.  Doe & Assocs., 252 F.3d at 1029-30; Banfield, 294 F. Supp. 2d at 171-74.

11

enforcement of state court discovery orders that have become final if the federal plaintiff was legally entitled to challenge the discovery order through the state appellate channels to the Supreme Court of the United States.[25]  As this is precisely the issue that is before us today, we must vacate the order of the district court for lack of federal subject matter jurisdiction.

### III.  CONCLUSION

The relief sought by UPB in the instant action is an outright reversal of a final, appealable discovery order of the Louisiana courts.  As the <u>Rooker-Feldman</u> doctrine eschews subject matter jurisdiction in this case, we vacate the district court's order[26] and remand with instructions to the district court to dismiss this action for lack of jurisdiction.

---

[25] Our ruling today should not be interpreted as necessarily allowing the <u>Rooker-Feldman</u> doctrine to defeat inferior federal court jurisdiction over federal challenges to state court orders that are interlocutory <u>and</u> non-appealable.  Courts are divided over this issue.  <u>Compare</u>, <u>e.g.</u>, <u>Banfield</u>, 294 F. Supp. 2d at 173-74; <u>Doe & Assocs.</u>, 252 F.3d at 1030; <u>Pieper v. Am. Arbitration Ass'n, Inc.</u>, 336 F.3d 458, 462-65 (6th Cir. 2003) (collecting cases); <u>Richardson v. Dist. of Columbia Court of Appeals</u>, 83 F.3d 1513, 1515 (D.C. Cir. 1996) <u>with</u> <u>Cruz v. Melecio</u>, 204 F.3d 14, 21 n.5 (1st Cir. 2000); <u>David Vincent, Inc. v. Broward County, Fla.</u>, 200 F.3d 1325, 1332 (11th Cir. 2000).  Our decision today does not implicate this split of authority for three reasons: (1) The state order at issue here was final and appealable under state law; (2) UPB had standing and an opportunity under state law to seek appellate review of the order; and (3) UPB's federal claims are clearly "inextricably intertwined" with the challenged state court order.

[26] As the district court had no jurisdiction to hear this case, its order and opinion on the merits of UPB's GLBA claim is vacated in its entirety, as well.

ORDER VACATED; REMANDED with instructions.