# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20384

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2014

Lyle W. Cayce
Clerk

HOUSTON REFINING, L.P.,

Plaintiff - Appellant

v.

UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION; UNITED STEEL WORKERS LOCAL UNION NO. 13-227,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, GARZA, and HIGGINSON, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

After filing for bankruptcy, Houston Refining, L.P. ("Houston Refining"), suspended matching contributions to its employees' 401(k) plans. The company later agreed to enter into arbitration regarding the suspension with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, acting on behalf of itself and its local unions (collectively "Union"). After the arbitrator found that the suspension violated the parties' collective bargaining agreement, Houston Refining brought an action in the district court to vacate the arbitral award, and the Union counterclaimed to enforce the award. Both parties moved for summary

No. 13-20384

judgment. The district court denied the company's motion, granted the Union's motion in part, and remanded to the arbitrator for clarification of the remedy. Houston Refining timely appealed. We reverse and remand.

**I**

Houston Refining operates a refinery on the east side of Houston. Many of its employees are members of the Union. In 2006, the Union and Houston Refining executed a collective bargaining agreement ("2006 CBA"). Ahead of the 2006 CBA's scheduled expiration on January 31, 2009, the parties began negotiating a successor contract. When the negotiation stalled, they agreed to a twenty-four-hour rolling extension of the 2006 CBA ("extension agreement"), which could be cancelled with twenty-four hours' notice.

Article 30 of the 2006 CBA establishes grievance and arbitration procedures, while Article 40 references various employee benefits. Article 30 defines a "grievance" as "any difference regarding wages, hours or working conditions between the parties . . . covered by this Agreement," 2006 CBA, art. 30, ¶ 1, and sets forth a grievance procedure that culminates in arbitration, *id.* art. 30, ¶ 7. Article 40 provides that employees are eligible to participate in various benefit plans. Among these plans is the "401K and Savings Plan for Represented Employees," *id.* art. 40, pt. III, ¶ 1(e) ("401(k) Plan"), administered by the Benefits Administrative Committee. Article 40 further provides that "the Company will provide advance notice of proposed changes to the benefit plans," after which the Union will have "[a] reasonable time period . . . to elect inclusion in or exclusion from the amended benefits plan." *Id.* art. 40, pt. III, ¶ 5.

No. 13-20384

According to Houston Refining negotiators, the Union negotiator informed them that the extension agreement would expire upon ratification of a successor CBA. In February 2009, the parties' negotiators reached a tentative agreement on a new CBA ("2009 CBA"), which the Union's local membership ratified by majority vote days later. However, the Union subsequently refused to sign the 2009 CBA after a disagreement arose over certain terms. The parties now agree that the 2009 CBA never took effect.[1]

In March 2009, having filed for Chapter 11 bankruptcy in the Southern District of New York, Houston Refining informed the Union that it would suspend its matching contributions to employees' 401(k) plans.[2] Although the Union representative did not mention an exclusion from the plan amendment, he responded, "Well you know I'm going to have to sue you." Houston Refining proceeded to eliminate the matching contributions by means of an amendment to the 401(k) Plan.

After the suspension came into effect, the Union filed a grievance with Houston Refining, demanding that the company resume matching contributions and compensate employees for any unpaid contributions. The text of the grievance quoted from the 2009 CBA, rather than the 2006 CBA. Houston Refining refused to process the grievance, claiming that the

---

[1] In 2009, Houston Refining filed a complaint with the National Labor Relations Board ("NLRB"), alleging that the Union unlawfully refused to execute an agreed-upon CBA. The NLRB concluded that because there was no meeting of the minds on "all substantive issues and material terms," *Intermountain Rural Elec. Ass'n*, 309 NLRB 1189, 1192 (1992), the 2009 CBA never came into effect. The parties do not dispute this determination. Eventually, in January 2010, the parties executed a new CBA, which is irrelevant to this appeal.

[2] Houston Refining filed for bankruptcy along with other subsidiaries and affiliates of Lyondell Chemical Company. Nothing in the record suggests that the bankruptcy court ordered the match suspension.

No. 13-20384

suspension was not a grievable issue. Months later, the Union commenced an adversary proceeding in the bankruptcy court to compel Houston Refining to arbitrate the grievance under the 2009 CBA. The complaint was amended to allege that, in the alternative, the 2006 CBA mandated arbitration.

The parties then concluded the Settlement Agreement to submit the grievance to arbitration, which the bankruptcy court approved. The Settlement Agreement provided in relevant part:

> 1. The parties agree to proceed to arbitration with the grievances [regarding 401(k) matching contributions] expeditiously and in compliance with the arbitration procedures . . . in the applicable collective bargaining agreements.
> [ . . . ]
> 4. At arbitration, the parties shall reserve all rights to present any and all arguments and advance any and all defenses to them including, without limitation, arguments concerning whether or not an applicable collective bargaining agreement was in effect at the time that a particular grievance arose.

Settlement Agreement, ¶¶ 1, 4. Pursuant to the terms of the Settlement Agreement, the parties entered into arbitration.

Following a two-day hearing, Arbitrator Charles G. Griffin rendered an award in favor of the Union. The arbitrator found that the 2006 CBA, by way of the extension agreement, was in effect when the Union filed its grievance and that the grievance was an arbitrable dispute over "wages" under that CBA's arbitration clause because the matching contributions "had monetary value." He also found immaterial the fact that the grievance quoted from the 2009 CBA. Lastly, he concluded that Houston Refining violated Article 40 of

No. 13-20384

the 2006 CBA by unilaterally amending the 401(k) Plan, because the Union had effectively elected exclusion from the amendment when it expressed intention to sue over the suspension.

Houston Refining filed suit in the district court seeking to vacate the arbitral award under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the Union counterclaimed to enforce the award. Both parties moved for summary judgment. The district court found that because the Settlement Agreement evinced the parties' clear agreement to have the arbitrator decide questions of arbitrability, its review of this issue would be deferential. The district court then upheld the arbitrability determinations—that the 2006 CBA existed when the grievance was filed, and that the arbitrator acted within his authority under that CBA's arbitration clause. On the merits, the district court upheld the arbitrator's finding that Houston Refining violated Article 40 of the 2006 CBA, but concluded that the arbitral award's remedy was ambiguous in certain respects. The district court accordingly denied the company's motion and granted the Union's motion in part,[3] but remanded to the arbitrator for clarification of the award's monetary value, among other issues. Houston Refining timely appealed.

## II

Questions of subject-matter jurisdiction are reviewed *de novo*. *Wagner v. United States*, 545 F.3d 298, 300 (5th Cir. 2008). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."

---

[3] The district court denied the Union's request for attorney's fees. This issue is not before us on appeal.

*Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

This court reviews a district court's grant of summary judgment *de novo*. *Resolution Performance Prods., LLC v. Paper Allied Indus. Chem. & Energy Workers Int'l Union, Local 4-1201*, 480 F.3d 760, 764 (5th Cir. 2007).

## III

Houston Refining first contends that the existence of an applicable CBA is necessary for subject-matter jurisdiction under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The company further claims that courts can assume jurisdiction to address the merits when factual issues are common to both, and that in this case, the CBA's existence is precisely such a common factual issue—without an existing CBA, the Union's grievance would not be arbitrable.[4] Thus, in Houston Refining's view, we must remand to allow the district court to determine whether a CBA existed, and if it decides in the negative, it could vacate the arbitral award on the grounds that the parties never agreed to arbitrate the dispute.

## A

The first question is whether, under section 301(a), the existence of a labor contract is a requirement for federal subject-matter jurisdiction, as Houston Refining submits. Relatedly, we ask if anything less would be sufficient to support such jurisdiction. Section 301(a) provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this

---

[4] Technically, the "merits" of this dispute concern whether Houston Refining's 401(k) match suspension violated Article 40 of the 2006 CBA, not whether the Union's grievance is arbitrable. But below, in Part III.B only, the term "merits" refers to the arbitrability issue, as distinguished from the jurisdictional question. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) (distinguishing between three issues of merits, arbitrability, and who decides arbitrability).

> chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). If the existence of a contract were jurisdictional, then because the district court's subject-matter jurisdiction would be "fairly in doubt," this Court (or the district court on remand) would be obligated to confirm this jurisdiction. *Iqbal*, 556 U.S. at 671. By contrast, if section 301(a) were not jurisdictional, then here, the question of the CBA's existence would be subsumed within the broader issue of whether the parties agreed to arbitrate the Union's grievance. *See infra* Part IV.B (discussing arbitrability questions).

We have in the past read section 301(a) as a jurisdictional requirement. In *Alexander v. International Union of Operating Engineers, AFL-CIO*, 624 F.2d 1235 (5th Cir. 1980), an international union directed its local union's officer to sign a project agreement previously rejected by the local's membership. Two individual local union members sued the unions for money damages under section 301, alleging a violation of the international union's constitution. *Id.* at 1236–37. The district court denied relief as to this claim on jurisdictional grounds. *Id.* at 1237, 1239.[5]

We first explained that "[t]he issue of whether individual union members may use section 301 as a jurisdictional basis to sue their local or international unions is a matter of first impression in this Circuit." *Id.* at 1238. We then prefaced our analysis by observing that "[a]s the language in section 301 makes

---

[5] The district court granted relief only as against the local union under its duty of fair representation, which issue is not relevant to this case. *Alexander*, 624 F.2d at 1237. As for the section 301 claim, we presume that the district court dismissed for lack of jurisdiction, given that we affirmed on this issue and concluded that the district court "properly denied jurisdiction under [section 301]." *Id.* at 1239.

clear, jurisdiction depends on whether there is a contract between an employer and a labor organization or between two labor organizations." *Id.* Following many sister circuits, we held that in order for section 301(a) jurisdiction to reach suits for violations of union constitutions, "the alleged violation must create a threat to industrial peace or have a significant impact upon labor-employer relations." *Id.* We reasoned that, in contrast to cases from other circuits where "a genuine impact on industrial peace had been adequately alleged," *id.*, "[w]ith respect to [the parent union constitution] and that alleged violation, plaintiffs have not shown there was any real threat to industrial peace or any significant impact on the relationship with the employer," *id.* at 1239. Accordingly, we concluded that the district court "properly denied jurisdiction under [section 301]." *Id.*[6]

Importantly, our statement in *Alexander* that "jurisdiction depends on whether there is a contract" merely acknowledged the presence of the term "contracts" in the statutory language. *Id.* at 1238. Nowhere did we require factual proof of a labor contract's existence, and our reasoning bears out our central concern: The plaintiffs did not even allege a contractual violation covered by section 301(a), as they failed to claim that the international union

---

[6] We undertook a similar analysis in determining whether plaintiffs' complaint was sufficient to "confer jurisdiction" under section 102 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 412. *Alexander*, 624 F.2d at 1239–40. This section allows district courts to hear actions for violations of, among other provisions, section 101(a) of the Act, which provides that "[e]very member of a labor organization shall have equal rights and privileges with such organization . . . ." 29 U.S.C. § 411(a)(1). Plaintiffs contended that the unions denied their right to vote by mandating the ratification of the rejected project agreement. *Alexander*, 624 F.2d at 1239. We explained that "[t]here is no allegation here that the two complaining union members have been discriminated against, or that they have been denied a privilege or right to vote that the union has granted to others." *Id.* at 1240; *see also id.* at 1241 (concluding that plaintiffs' allegations of discrimination were sufficient) (Clark, J., concurring in part and dissenting in part).

constitution was a contract whose violation "create[d] a threat to industrial peace or ha[d] a significant impact upon labor-employer relations." *Id.*[7]

*Alexander*, then, establishes that an allegation of a contractual violation is *necessary* for section 301(a) jurisdiction. But we had no occasion to decide whether such an allegation was *sufficient* for such jurisdiction. As particularly relevant to this case, *Alexander* did not consider whether, if an allegation of a contract's existence is later challenged and disproven as a factual matter, section 301(a) jurisdiction could still reach such a case. *See* Jolly Op. at 3.

The Supreme Court subsequently answered this question: An allegation of a labor contract violation is *sufficient* to support subject-matter jurisdiction under section 301(a). *See Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. United Auto., Aerospace & Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 657–58 (1998). In *Textron*, a union sought a declaratory judgment that its CBA with Textron was voidable. *Id.* at 654–55. The union "alleg[ed]" that Textron had fraudulently induced the CBA's execution, but "[did] not allege that either it or Textron ever violated the [CBA]." *Id.* at 655. The district court dismissed "for lack of subject-matter jurisdiction" under section 301(a), and the court of appeals reversed. *Id.* at 656.

---

[7] *See also Wooddell v. Int'l Bhd. Of Elec. Workers, Local 71*, 502 U.S. 93, 98–99 (1991) ("No employer-union contract is involved here; if the District Court had § 301 subject-matter jurisdiction over petitioner's suit against his union, it is because his suit *alleges a violation* of a contract between two unions, and because § 301 is not limited to suits brought by a party to that contract . . . ." (emphasis added) (internal citations omitted)); *id.* at 98 n.3 (explaining that district courts have jurisdiction over suits by a union member against his union for a violation of the union constitution "only if it is *charged* that the breach *alleged* violates a contract between two labor organizations" (emphasis added)).

Houston Refining misunderstands *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489 (5th Cir. 1982). There, a union sued two trade associations that lacked any contractual relationship with the union, but that allegedly conspired to effect their member companies' breaches of their labor contracts with the union. We held that because the plaintiff could not even *allege* that the defendants were parties to a labor contract, jurisdiction under section 301 was lacking. *Id.* at 500–502.

No. 13-20384

In reversing the court of appeals, the Supreme Court first explained that section 301(a) "confers federal subject-matter jurisdiction only over '[s]uits for violation of contracts,'" *id.* at 656, and that as a textual matter, such suits do not include "suits that claim a contract is invalid," *id.* at 657. The Court then explained:

> This does not mean that a federal court can never adjudicate the validity of a contract under § 301(a). That provision simply erects a gateway through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse. Thus if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense.

*Id.* at 657–58. In closing, the Court reasoned that "[s]ection 301(a) jurisdiction does not lie over such a case" because the union "neither alleges that Textron has violated the contract, nor seeks declaratory relief from its own alleged violation." *Id.* at 658; *see also id.* at 661–62 (restating same conclusion).

*Textron* thus teaches that an "*alleged* violation" satisfies section 301(a)'s jurisdictional requirement. *Id.* at 658 (emphasis added). The Court's hypothetical "adjudica[tion]" of the "affirmative defense" of a labor contract's invalidity would require a disposition on the merits of that defense, not on jurisdictional grounds, since the parties would have already passed through the jurisdictional "gateway . . . into federal court." *Id.* at 658 (emphasis added).[8] This principle complements our analysis in *Alexander*, and reading the two

---

[8] *Textron*'s teaching that a court can adjudicate an affirmative defense "that the contract was *invalid*," *Textron*, 523 U.S. at 658 (emphasis added), contemplates no distinction between a non-existent contract and a void contract (that was previously existing, *i.e.*, voidable). *Contra* Jolly Op. at 3.

cases together yields the conclusion that an allegation of a labor contract violation is both necessary *and* sufficient to support subject-matter jurisdiction under section 301(a).[9] If the court later finds the allegedly violated contract to be non-existent or invalid, it must dismiss for failure to state a claim, not for lack of jurisdiction.[10]

To be sure, neither *Alexander* nor *Textron* implicated arbitration, as this case does. But no authority supports the proposition that arbitration alters those cases' teachings on the jurisdictional requirement of section 301(a)—that a party alleging a labor contract violation passes through the statute's jurisdictional "gateway." *Id.* Indeed, the Supreme Court has previously treated an agreement to arbitrate as any other labor contract whose alleged violation is actionable under section 301(a). *See Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241 (1962) ("The Congress has by [section] 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate." (citation omitted)).

Houston Refining urges us to reject the Third and Sixth Circuits' approach of treating the factual existence of a labor contract as an element of a plaintiff's claim and instead follow the Eighth Circuit, which recognizes the jurisdictional nature of section 301(a). *Compare Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1007 (6th Cir. 2009); *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 189–90 (3d Cir.

---

[9] While an allegation is sufficient for subject-matter jurisdiction *under section 301(a)*, other statutory provisions impose additional jurisdictional requirements, which are not at issue on this appeal. *See* 29 U.S.C. 185(c) (personal jurisdiction limitations).

[10] To be clear, my approach would not preclude a challenge to the factual existence of a labor contract; a court need not assume "permanently" that a labor contract exists once such existence is alleged. Jolly Op. at 3. However, under *Textron*, any challenge to such existence would be decided on the merits.

2009), *with ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 961–64 (8th Cir. 2011). The Third and Sixth Circuits relied on *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), in which the Supreme Court explained that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character." *Id.* at 516. In *ABF Freight*, the Eighth Circuit explained that the Third and Sixth Circuits, in interpreting *Arbaugh*, did not have the benefit of the Supreme Court's subsequent discussion in *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197 (2011). The *Henderson* Court, after reviewing *Arbaugh*'s "bright line" rule, explained that "[w]hen a long line of [the] Court's decisions left undisturbed by Congress has treated a similar requirement as jurisdictional, [the Court] will presume that Congress intended to follow that course." *Id.* at 1203 (internal citation and quotation marks omitted). Applying *Henderson*, the Eighth Circuit reviewed several earlier Supreme Court cases on section 301(a) including *Textron*, all of which treated allegations of a labor contract violation as a jurisdictional requirement. *See ABF Freight System*, 645 F.3d at 961–64 (reviewing cases). Accordingly, the court concluded that section 301(a) is "jurisdictional." *Id.* at 963.

But neither the Third, Sixth, nor Eighth Circuits contemplated whether an alleged labor contract violation can support federal subject-matter jurisdiction under section 301(a). The Third and Sixth Circuits are correct insofar as they hold that factual proof of a labor contract is *not* necessary for such jurisdiction, and that if a court finds that such a contract is invalid, it should dismiss for failure to state a claim. *See Textron*, 523 U.S. at 658. But those decisions did not recognize that under *Textron*, section 301(a) jurisdiction

requires an alleged labor contract violation.[11] The Eighth Circuit, for its part, correctly holds that section 301(a) is "jurisdictional," but *ABF Freight* does not clearly explain what suffices for obtaining such jurisdiction.[12] Accordingly, the jurisdictional question in this case is best resolved by *Alexander* and *Textron*, rather than any decision of our sister circuits.

Lastly, section 301(a) jurisdiction cannot be so permissive as to reach any action filed "because a contract has been violated," Higginson Op. at 5 (quoting *Textron*, 523 U.S. at 657), or any "suit . . . to vacate an arbitral decision finding that the plaintiff violated a CBA," *id.* at 4. These propositions would side-step *Textron*'s copious references to the union's failure in that case to "allege" any violation of the CBA. *See Textron*, 523 U.S. at 655, 658, 661–62.[13] Nor could section 301(a) jurisdiction reach *any* "controversies involving

---

[11] While the Sixth Circuit in *Winnett* characterized its own prior holdings as "drive-by jurisdictional rulings," *Winnett*, 553 F.3d at 1005, it did not dismiss the Supreme Court's prior jurisdictional rulings as equally inconsequential. At least *Textron*'s treatment of section 301(a) as jurisdictional goes well beyond the "unrefined dispositions" with which the *Arbaugh* Court expressed concern. *Arbaugh*, 546 U.S. at 511; *see also Steel Co.*, 523 U.S. at 91 (describing "drive-by jurisdictional rulings" as cases in which jurisdictional issues were "assumed by the parties, and . . . assumed without discussion by the Court").

[12] *See ABF Freight System*, 645 F.3d at 963 (reviewing Supreme Court case law holding that allegations are sufficient for section 301 jurisdiction, mentioning plaintiff's "colorable claims" of labor contract violation, but also confirming formation of contract as factual matter).

[13] A jurisdictional test requiring only that a suit originate "because a contract has been violated" is incompatible with the well-pleaded complaint rule, which Judge Higginson would apply to section 301 actions. Higginson Op. at 3 n.2. Under the well-pleaded complaint rule, courts must look only to the complaint to confirm their jurisdiction. But if a complaint seeking vacatur happens not to mention that the arbitral award arose from an alleged labor contract violation, then a court could examine the award to confirm its jurisdiction.

Furthermore, *Textron* does not hold that a declaratory-judgment plaintiff who has "not alleged the violation of a contract . . . therefore [has] not 'present[ed] a case or controversy . . . .'" Higginson Op. at 5; *see also id.* at 3 n.2. The "case or controversy" holding of *Textron* was premised solely on the unique factual circumstances of the two parties to that action— there happened to be "no evidence" that Textron and the union "had any concrete dispute over the contract's voidability at the time when the suit was filed." *Textron*, 523 U.S. at 660, 661. The Court even emphasized that it was "assuming (without deciding)" that a "declaratory-judgment complaint raising a *nonfederal* defense to an anticipated *federal* claim" would confer federal-question jurisdiction under 28 U.S.C. § 1331. *Id.* at 659, 660.

collective-bargaining agreements." Higginson Op. at 4 (quoting *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988)). In *Lingle*, the Supreme Court did mention that certain "controversies involving" CBAs fall within section 301 jurisdiction, summarizing its earlier holding in *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448 (1957). But *Lincoln Mills* confirmed section 301 jurisdiction not for any disputes merely implicating CBAs, but rather cases involving alleged labor contract violations, in which parties had sought "*enforcement*" of those contracts—namely, the "performance of promises to arbitrate grievances under [CBAs]." *Lincoln Mills*, 353 U.S. at 451 (emphasis added), *accord Lingle*, 486 U.S. at 403; *see also Sinclair Refining Co.*, 370 U.S. at 241.[14] Furthermore, to allow any suit merely "involving" a CBA—even lacking an alleged violation—would run afoul of *Textron*. After all, the *Textron* Court held that section 301 jurisdiction did not reach a suit "involving" a CBA's voidability because the complaint *did not allege* a CBA violation.[15]

Under *Textron* and *Alexander*, the alleged violation of a labor contract is both necessary and sufficient to invoke federal subject-matter jurisdiction under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). *See Textron*, 523 U.S. at 657–58; *Alexander*, 624 F.2d at 1238.

## B

Because a party need only *allege* the violation of a labor contract to invoke federal subject-matter jurisdiction under section 301, this requirement was easily satisfied here.

---

[14] Indeed, the fact that the *Textron* Court did not bother to discuss either *Lingle* or *Lincoln Mills* is telling: The principle common to all three decisions is that a party must allege a labor contract violation in order to invoke section 301(a) jurisdiction.

[15] *See Textron*, 523 U.S. at 658 (holding that "[s]ection 301(a) jurisdiction does not lie" where plaintiff union sought declaratory judgment that a CBA was voidable).

14

No. 13-20384

This suit involves at least two alleged violations of a labor contract. First, Houston Refining's complaint claimed that the Union alleged the company had violated a CBA.[16] Second, in requesting vacatur of the arbitral award, Houston Refining alleged that the award violated the terms of the 2006 CBA—assuming *arguendo* its existence.[17] Accordingly, the district court properly exercised subject-matter jurisdiction over this suit for "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a).[18]

Additionally, because section 301's jurisdictional requirement does not require factual proof of a valid labor contract, Houston Refining's collateral attack on arbitrability is meritless. Houston Refining relies on *Montez v. Department of the Navy*, 392 F.3d 147 (5th Cir. 2004), for the proposition that "where issues of fact are central both to subject matter jurisdiction and the claim on the merits, . . . the trial court must assume jurisdiction and proceed to the merits." *Id.* at 150. By Houston Refining's logic, because the "merits" of

---

[16] *See* Compl., Appl. to Vacate Arbitration Award & Mem. of Law in Supp. at 8 (claiming that the Union representative, "submitted Grievance No. 0-12-09 . . . , purportedly under the 2009-12 tentative agreement . . . demanding that the Company reinstitute the matching contribution under the 401(k) Plan"); *id.* at 18 (claiming that arbitrator "determined, correctly, that the Grievance alleged violations of provisions of the 2009-12 tentative agreement"). A plaintiff's claim that it (and not the defendant) allegedly violated a labor contract is sufficient to support section 301 jurisdiction. *See Textron*, 523 U.S. at 657 ("'Suits for violation of contracts' under § 301(a) are not suits that claim a contract is invalid, but *suits that claim a contract has been violated*." (emphasis added)); *id.* at 658 ("[A] declaratory judgment *plaintiff accused of violating a collective-bargaining agreement* may ask a court to declare the agreement invalid." (emphasis added)).

[17] *See* Compl., Appl. to Vacate Arbitration Award & Mem. of Law in Supp. at 18 ("Where arbitrators act 'contrary to express contractual provisions,' they have exceeded their powers."); *id.* at 22 (alleging that "because the dispute over the matching contributions is not subject to the arbitration agreement under the 2006-09 CBA, Arbitrator Griffin exceeded his powers and the Award should be vacated"); *id.* at 26 (alleging that "if the 401(k) Plan's terms are in fact wholly incorporated into the 2006-09 CBA . . . then Arbitrator Griffin's Decision renders Section 11 of the 401(k) Plan meaningless").

[18] Houston Refining urges us to remand to enable the district court "to evaluate independently . . . the existence of a CBA." If the district court's subject-matter jurisdiction indeed hinged on a fact-intensive determination, remand would be appropriate. But as explained above, no such factual inquiry is necessary under section 301.

this appeal concern whether the grievance was arbitrable, and because the parties agree that a valid CBA was necessary for such arbitrability, the question of the CBA's existence is common to both jurisdiction and the merits. *See infra* Part IV.B. Thus, the company does not ask the district court to dismiss for lack of jurisdiction—for dismissal would allow the arbitral award to stand.[19] Rather, invoking *Montez*, Houston Refining apparently views this "jurisdictional" claim as an alternative path for the district court to vacate the award on arbitrability grounds, a path that would conveniently elide the question of whether the parties agreed to give arbitrability to the arbitrator. *See infra* Part IV.A.

But *Montez*'s interpretation of the Federal Tort Claims Act is inapplicable because as explained above, under *Textron*, the jurisdictional issue under section 301(a) does not hinge on "issues of fact," but rather on allegations of a contract violation. *Montez*, 392 F.3d at 150. That is, under section 301(a), the jurisdiction and arbitrability inquiries are not factually "intertwined." *Id.* Accordingly, *Montez* cannot permit the district court to assume jurisdiction in order to resolve the arbitrability question *de novo*.[20]

Because Houston Refining's complaint alleges both that the Union claimed the company violated a CBA, and that the arbitral award violates the

---

[19] Indeed, Houston Refining claims in its "Statement of Jurisdiction" that "[t]he lower court had jurisdiction under the LMRA," quoting and citing 29 U.S.C. § 185.

[20] Although we need not pass on this question today, we express doubt about whether a court can ever "assume jurisdiction and proceed to the merits," *Montez*, 392 F.3d at 150, in light of the Supreme Court's rejection of such "hypothetical jurisdiction," *Steel Co.*, 523 U.S. at 94–95. Read narrowly, our holding in *Montez* is limited to actions under the Federal Tort Claims Act, *Montez*, 392 F.3d at 150, but the opinion also refers to the permissibility of hypothetical jurisdiction as the "general rule," *id.* In this observation, *Montez* relied on *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981). We reserve for a future case a fuller consideration of the correctness of *Montez*.

2006 CBA, the district court had subject-matter jurisdiction under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).[21]

## IV

Houston Refining next contends that the district court erred in deferring to the arbitrator's determination of the grievance's arbitrability. According to the company, because the parties never agreed in clear and unmistakable terms to give the issue of arbitrability to the arbitrator, the district court was obligated to decide the issue independently. Houston Refining further urges us to resolve certain dispositive arbitrability questions on appeal and render judgment in its favor.

"[J]udicial review of an arbitration award arising from the terms of a CBA is narrowly limited" as to the merits of the award. *Albemarle Corp. v. United Steel Workers*, 703 F.3d 821, 824 (5th Cir. 2013) (citation and internal quotation marks omitted).[22] By contrast, the law presumes that courts have

---

[21] A recent panel of this Court held that it was without "statutory ground for appellate jurisdiction under the [Federal Arbitration Act ('FAA')]" because the district court "neither confirmed nor vacated the arbitration award," but only denied a motion to dismiss and remanded the award to the arbitration panel for clarification of damages. *Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, No. 13-10852, 2014 WL 3703868, at *5 (5th Cir. July 25, 2014). We assume (without deciding) that *Murchison*, decided under the FAA's provisions governing appellate jurisdiction, 9 U.S.C. § 16(a)(1), governs this appeal in an action under section 301 of the LMRA. Even so, *Murchison* is distinguishable. There, the panel explained that the district court "neither vacated nor confirmed the arbitration award but instead remanded the award back to the arbitration panel for further consideration of" damages, and "did not dismiss" the case, but in fact denied a motion to dismiss. *Murchison*, 2014 WL 3703868, at *2, 4. Here, although the district court remanded the award to the arbitrator for clarification of the remedy, it also granted in substantial part the Union's motion for summary judgment (denying the motion only as to attorney's fees) and concluded that "Houston Refining failed to establish . . . that the arbitrator's award should be vacated." Thus, its "order confirming an arbitration award" is appealable. *Id.* at *2.

[22] This judicial deference extends to both the merits of an arbitral award and to an arbitrator's resolution of "procedural preconditions" to arbitration. *See BG Group PLC v. Republic of Arg.*, 134 S. Ct. 1198, 1207 (2014). In its reply brief, Houston Refining suggests that *BG Group* might help clarify whether the grievance's quotation from the 2009 CBA implicates arbitrability or merely procedural preconditions. We generally do not consider a claim raised for the first time in a reply brief. *Cox v. DeSoto Cnty., Miss.*, 564 F.3d 745, 749

plenary power to decide the gateway question of a dispute's "arbitrability"—
*i.e.*, "whether [the parties] agreed to arbitrate the merits." *First Options of Chi.,
Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

When a party calls upon a court to decide a dispute's arbitrability, the
court must determine whether the dispute falls within the ambit of the parties'
agreement to arbitrate. "[A]rbitration is simply a matter of contract between
the parties; it is a way to resolve those disputes—but only those disputes—that
the parties have agreed to submit to arbitration." *First Options*, 514 U.S. at
943. If the parties did not so agree, then the "party who has not agreed to
arbitrate will normally have a right to a court's decision about the merits of its
dispute." *Id.* at 942.

Yet like any other disputed issue, even the gateway question of
arbitrability can be given to an arbitrator, if the parties so choose. But the
party contending that an arbitrator has authority to decide arbitrability "bears
the burden of demonstrating clearly and unmistakably that the parties agreed
to have the arbitrator decide that threshold question . . . ." *ConocoPhillips, Inc.
v. Local 13-0555 United Steelworkers Int'l Union*, 741 F.3d 627, 630 (5th Cir.
2014) (citation and internal alteration omitted). "[M]erely arguing the
arbitrability issue to an arbitrator does not indicate a clear willingness to
arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's
decision on that point." *First Options*, 514 U.S. at 946. Nor do "ambiguity and
silence" suffice. *ConocoPhillips*, 741 F.3d at 632. If the party cannot carry its
burden, then the "court should decide [the arbitrability] question just as it

---

(5th Cir. 2009). Additionally, we observe that Houston Refining's interests would not be
served by a determination that the quotation issue implicates mere "procedural
preconditions" under *BG Group*, since the arbitrator would then be afforded substantial
deference on this matter.

would decide any other question that the parties did not submit to arbitration, namely, independently." *Id.* at 630 (quoting *First Options*, 514 U.S. at 943).[23]

## A

We first consider whether, on the undisputed facts at summary judgment, the Union carried its burden of proving that the parties "clearly and unmistakably" agreed to have the arbitrator decide arbitrability. *ConocoPhillips*, 741 F.3d at 630. Absent such proof, the district court had to decide arbitrability independently.[24] The Union submits that the parties expressed agreement to arbitrate arbitrability both by their conduct in arbitration proceedings and by the Settlement Agreement, and we consider each in turn below.[25]

As for their conduct at arbitration, the parties agree that Houston Refining argued at length about arbitrability before the arbitrator. But "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue." *First Options*, 514 U.S. at 946. The Union does not dispute this well-established rule or advance any other reason why

---

[23] While cases such as *First Options* arose under the Federal Arbitration Act, courts "may rely on" this jurisprudence in reviewing arbitrations under section 301 of the Labor Management Relations Act. *Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 494 (5th Cir. 2003). Although Houston Refining is correct that judicial review in these two contexts is "not interchangeable," *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 384 (5th Cir. 2004), the limited differences are irrelevant to this dispute.

[24] The district court mistakenly articulated the burden of proof applicable to a party who seeks vacatur of an arbitral award *on the merits*: "As the party seeking to vacate the arbitral award, Houston Refining bears the burden of proof." Here, Houston Refining does not challenge the arbitrator's merits determination that the match suspension violated Article 40; rather, at issue is the procedural question of who decides arbitrability. *See First Options*, 514 U.S. at 942 (distinguishing between three issues of merits, arbitrability, and who decides arbitrability). Thus, as the party claiming that the arbitrator has the power to decide arbitrability, the Union—not Houston Refining—bears the initial burden of proving that the parties agreed in sufficiently clear terms to delegate this issue to the arbitrator and thereby take the question away from the courts. *ConocoPhillips*, 741 F.3d at 630.

[25] The parties do not dispute that the 2006 CBA, standing alone, did not manifest an agreement to arbitrate arbitrability.

No. 13-20384

the arbitration proceedings demonstrated any agreement to arbitrate arbitrability.

The Settlement Agreement is also unavailing because its terms are too ambiguous to evince a "clear and unmistakable" agreement to arbitrate arbitrability. This ambiguity is borne out by the parties' plausible but conflicting interpretations. Houston Refining contends that it did not agree to give the arbitrator the final word on arbitrability, citing this clause:

> At arbitration, the parties shall reserve all rights to present any and all arguments and advance any and all defenses to them including, without limitation, arguments concerning whether or not an applicable collective bargaining agreement was in effect at the time that a particular grievance arose.

Settlement Agreement, ¶ 4. The company explains that, in particular, the words "shall reserve" demonstrate that the parties contemplated potential judicial review, especially on the matter of arbitrability, which encompasses the factual inquiry into "whether or not an applicable collective bargaining agreement was in effect at the time that a particular grievance arose." *Id.* In Houston Refining's view, the Union effectively construes "reserve" to mean "exhaust." The Union does not refute this reading, but points to another clause in the Agreement stating that the parties "agree[d] to proceed to arbitration with the grievances [regarding 401(k) contributions] expeditiously and in compliance with the arbitration procedures . . . in the applicable collective bargaining agreements." *Id.* ¶ 1. While these provisions seem to be in tension, the Union proffers nothing more.[26]

---

[26] The prepositional phrase "[a]t arbitration" does nothing to resolve the underlying ambiguity. In light of the "context of the agreement," Higginson Op. at 6, one could reasonably read the Settlement Agreement to mean "that the parties reserve the right to make [any and all] arguments *at arbitration*," *id.* at 7. This interpretation, however, relies on repositioning the phrase "at arbitration," such that it modifies "to present any and all arguments . . . ."

The Union additionally contends that allowing Houston Refining to return to the courts would result in a "waste of judicial resources . . . [that] the policy of deference to arbitral awards intends to avoid."[27] Houston Refining, for its part, acknowledges that under its reading, the Settlement Agreement "inverts the usual timing": The parties forgo an initial court decision about arbitrability but, following arbitration, are able to litigate about arbitrability and other issues in court. Yet the Supreme Court in *First Options* rejected the same concerns about "delay and waste" and concluded that "factual circumstances vary too greatly to permit a confident conclusion about whether allowing the arbitrator to make an initial (but independently reviewable) arbitrability determination would, in general, slow down the dispute resolution process." *First Options*, 514 U.S. at 946–47. Thus, the *First Options* default rule that courts decide arbitrability absent clear agreement avoids case-by-case weighing of costs and benefits, and strikes a desirable balance between reaping the efficiencies of arbitration and ensuring access to judicial review on the "rather arcane" question of who decides arbitrability, which parties "reasonably would have thought a judge, not an arbitrator, would decide." *See id.* at 945 (citation omitted).

In light of the parties' "ambiguity and silence," *ConocoPhillips*, 741 F.3d at 632, the Union has not carried its burden of establishing that the parties "clearly and unmistakably" agreed to arbitrate arbitrability, *id.* at 630.[28]

---

Settlement Agreement, ¶ 4. But in the actual text of the Settlement Agreement, "[a]t arbitration" modifies only the main verb phrase "shall reserve," which again could be read to mean "shall reserve for judicial review." Again, left with two interpretations of the phrase "shall reserve," we cannot conclude that the parties "clearly and unmistakably" agreed to arbitrate arbitrability. *ConocoPhillips*, 741 F.3d at 630.

[27] *See also* Higginson Op. at 7 ("There would have been no need to stipulate to th[e] fact [that the parties could advance 'all arguments and defenses' at arbitration] in advance if the parties did not intend the arbitrator to decide those questions.").

[28] To be sure, an arbitration agreement need not recite verbatim that the "parties agree to arbitrate arbitrability" in order to manifest "clear and unmistakable" agreement.

No. 13-20384

Accordingly, we hold that the district court erred as a matter of law in failing to decide arbitrability "just as it would decide any other question that the parties did not submit to arbitration, namely, independently." *Id.*

## B

We decline today to decide whether the Union's grievance was arbitrable. This appeal presents three distinct arbitrability inquiries, and the district court is better positioned to assess the parties' arguments in the first instance and develop the record as necessary.

The first arbitrability inquiry is whether the 2006 CBA existed when the Union filed its grievance. The parties seem to agree that if no CBA was in effect at all, then arbitration would be unavailable. This arbitrability question also appears to be the most fact-intensive one, and neither party asks us to decide it on the limited record before us.

The second and third arbitrability inquiries concern whether, even if the 2006 CBA existed, the arbitrator exceeded his authority under that CBA. Houston Refining urges us to hold that the arbitrator did exceed his authority and vacate the award—on either of two independent grounds. First, the company contends that the Union's grievance quoted the text of the 2009 CBA,

---

*See, e.g.*, *Petrofac, Inc. v. DYNMcDermott Petroleum Operations*, 687 F.3d 671, 675 (5th Cir. 2012) (concluding that parties agreed to arbitrate arbitrability by incorporating into their arbitration agreement the rules of the American Arbitration Association, which state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," and reviewing similar cases from sister circuits); *Allen v. Regions Bank*, 389 F. App'x 441, 446 (5th Cir. 2010) (unpublished) (determining that parties clearly agreed to arbitrate arbitrability where agreement stated that "[a]ny dispute regarding whether a particular controversy is subject to arbitration . . . shall be decided by the arbitrator(s)"). Furthermore, because the delegation clause granting broad jurisdiction to the arbitrator in *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010), did not include any proviso that the parties "shall reserve" rights to make arguments, that case is inapposite. *See id.* at 66 (explaining that delegation clause provided that "Arbitrator . . . *shall have exclusive authority* to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement" (emphasis added)); Higginson Op. at 7–8.

such that the grievance is invalid under the 2006 CBA's arbitration clause. *See* 2006 CBA, art. 30, ¶¶ 1, 7(b). Additionally, Houston Refining submits that its unilateral suspension of the 401(k) Plan, allegedly in violation of Article 40 of the 2006 CBA,[29] does not concern "wages" within the meaning of the CBA's arbitration clause. *See id.* art. 30, ¶ 1.

We reserve these and all other arbitrability questions for the district court, which must on remand decide the grievance's arbitrability "independently," without deference to the arbitral decision. *ConocoPhillips*, 741 F.3d at 630.

## C

Judge Higginson, in dissent, would vacate the arbitral award on the grounds that the arbitrator exceeded his authority because the term "wages" in the CBA's arbitration clause cannot encompass this dispute over the 401(k) match suspension. Although we do not decide any question of arbitrability, given the important doctrinal questions raised by the dissent, we here explain why we would disagree, at least on this record.

---

[29] Article 40 of the 2006 CBA imposes procedural requirements on changes to the 401(k) Plan:

> During the term of this Agreement, the Company will provide advance notice of proposed changes to the benefit plans covered by the Agreement. . . . A reasonable time period will be provided for the Union to elect inclusion in or exclusion from the amended benefits plan. If the Union elects exclusion, represented employees shall continue participation in the existing, unchanged benefits plan for the term of the Collective Bargaining Agreement.

2006 CBA, art. 40, pt. III, ¶ 5.

No. 13-20384

1

The dissent errs in construing Houston Refining's claim about the scope of the CBA's arbitration clause as a claim that the arbitrator exceeded his powers, rather than a challenge to the dispute's *arbitrability*.

Under its assumptions,[30] the dissent reasons that we would have authority to construe the scope of the 2006 CBA's arbitration clause because we may always decide whether the arbitrator "exceed[ed] his contractual mandate," *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 946 (5th Cir. 2005), and because, here, Houston Refining contends that the arbitrator "exceeded his powers by treating a 401(k) dispute as grievable."

But Houston Refining has not established an excess-of-powers challenge under *Beaird*. In *Beaird*, we considered a party's challenge to an arbitrator's mandate to decide the merits, where arbitrability was "undisputed." *Beaird*, 404 F.3d at 943. Unlike Beaird, Houston Refining does not contend that the arbitrator exceeded his mandate *to decide the merits*. In fact, Houston Refining correctly observes that "the merits are not here" at all on this appeal; it does not challenge the arbitrator's finding that the unilateral 401(k) match suspension violated Article 40 of the CBA. Nor does Houston Refining demonstrate that the arbitrator exceeded his mandate *to decide arbitrability*—by ignoring "unambiguous," "express contractual provisions" prohibiting arbitration of the Union's grievance. *Beaird*, 404 F.3d at 946.

Rather, Houston Refining's contention—that the parties' agreement to arbitrate does not cover the Union's grievance—concerns a quintessential question of the dispute's *arbitrability*. *Supra* Part IV.B.[31] To be sure, Houston

---

[30] *See* Higginson Op. at 9–10 (applying to arbitrability question here the same deferential review generally applicable to any issue submitted by the parties to the arbitrator).

[31] Here, I examine the substance of Houston Refining's claim and conclude that it is actually an arbitrability challenge. By contrast, for jurisdictional purposes, I construe the

Refining deploys the phrase "exceeded his powers" and cites *Beaird*. But this is nothing more than an attempt to transform an arbitrability claim into an excess-of-powers claim, thus preserving an alternate grounds for vacatur. Indeed, we have routinely construed claims that an arbitral body "exceeded its powers *by issuing an award on a claim not covered by the parties' arbitration agreement*" as raising a "question of arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 674 (5th Cir. 2012) (emphasis added); *see also Downer v. Siegel*, 489 F.3d 623, 626–27 (5th Cir. 2007) (same). Tellingly, both parties' leading cases on whether certain disputes implicating benefits are covered by arbitration clauses all invoke the presumption *of arbitrability*; therefore, this case, like those, presents a question of arbitrability. *See infra* Part IV.C.2 (reviewing cases).

The dissent wants to have it both ways: Even if we were to find that the parties agreed clearly and unmistakably to arbitrate arbitrability, we would retain the power to vacate the award for lack of arbitrability. But our law forbids such a procedure.

**2**

Because we would hold that the parties here did *not* clearly and unmistakably agree to arbitrate arbitrability, *see supra* Part IV.A, the courts must decide arbitrability questions independently.

But this independent inquiry is circumscribed by a presumption favoring arbitrability: "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). That presumption applies "unless it may be said with

face of Houston Refining's complaint and conclude that the company does allege that the arbitral award violates the parties' contract by exceeding the arbitrator's mandate. *See supra* note 17. Of course, a complaint facially alleging only that a dispute was not arbitrable would also sufficiently allege a violation of a labor contract—the arbitration of a non-arbitrable dispute violates the scope of powers delegated to the arbitrator.

positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* However, "the policy that favors resolving doubts in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or authorize an arbiter to disregard or modify the plain and unambiguous provisions of the agreement." *Smith v. Transp. Workers Union of Am., AFL-CIO Air Transport Local 556*, 374 F.3d 372, 375 (5th Cir. 2004) (citation and internal quotation marks omitted).[32]

Even undertaking an independent review of arbitrability under the 2006 CBA, assuming the CBA existed, we would not conclude on this record that because this dispute does not concern "wages," vacatur is proper.

The dissent's analysis of the 2006 CBA says nothing about whether "it may be said with *positive assurance* that the arbitration clause is not

---

[32] Where parties agree to give an issue to the arbitrator, courts apply a deferential standard of review; absent such agreement, courts independently decide the issue. *See Schneider v. Kingdom of Thailand*, 688 F.3d 68, 72 (2d Cir. 2012). Courts must guard against "conflat[ing] the concepts" of deferential and independent review. *Id.* Although independent review "also is deferential" insofar as courts apply the presumption of arbitrability, Higginson Op. at 10 n.4, the dissent renders meaningless the inquiry into whether parties agreed to arbitrate arbitrability—because either way, a court could ultimately interpret the arbitration clause's scope *de novo.*

Tellingly, this Court has never found clear and unmistakable agreement to arbitrate arbitrability before proceeding to conduct an independent analysis of the arbitration agreement to determine arbitrability. In separating these approaches, we are in the good company of the First, Second, Fourth, Seventh, and Ninth Circuits. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (undertaking independent review only after determining that parties did not clearly and mistakably agree to arbitrate arbitrability); *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 104 (4th Cir. 2012) (same); *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 376 (1st Cir. 2011) (same); *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 422 F.3d 522, 527 (7th Cir. 2005) (explaining lack of clear and unmistakable agreement to arbitrate arbitrability required court "to decide whether the dispute was arbitrable"); *see also Schneider*, 688 F.3d at 74 (concluding that because parties agreed to arbitrate arbitrability, appellant "is not entitled to an independent judicial redetermination of that same question"). *But see Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246–47 (11th Cir. 2014) (undertaking independent review of scope of arbitration clause even after concluding that parties agreed clearly and unmistakably to arbitrate arbitrability).

susceptible of *an interpretation* that covers the asserted dispute." *AT & T*, 475 U.S. at 650 (emphasis added). That is, we have no license to interpret the CBA *de novo*; rather, we must ask whether *any* interpretation could bring this dispute within the ambit of the arbitration clause, bearing in mind that "[d]oubts should be resolved in favor of coverage." *Id.* Here, Arbitrator Griffin concluded that the dispute was arbitrable, explaining that because matching contributions "had monetary value," they could be considered a form of wages, and that the match suspension violated an express provision of the CBA—Article 40, which governed procedures for amending the 401(k) Plan.

The case law makes the CBA particularly "susceptible of" the arbitrator's interpretation. *Id.*[33] First, this case can be distinguished from our decision in *Local Union No. 4-449, Oil, Chem. & Atomic Workers Union v. Amoco Chem. Corp.*, 589 F.2d 162 (5th Cir. 1979). At issue in *Amoco* were "two grievances filed by [union] members . . . contesting the denial of sick pay benefits for certain work absences." *Id.* at 163. We concluded that a process for obtaining sickness and disability benefits, "expressly constructed" by the CBA and benefits plan, "sufficiently exclude[d] arbitration for grievances concerning sickness and disability benefits." *Id.* at 164. We relied on the fact that under the CBA, Amoco's Board of Directors had "the right to interpret and apply the [Benefits] Plan," and that their decision "would be final." *Id.* Thus, the two grievances fell squarely within the jurisdiction of the Board of Directors.

In contrast to *Amoco*, this case does not involve individual Union members' challenges to the denial of their benefits *under the 401(k) Plan*—the

---

[33] To be clear, under the presumption of arbitrability, we need not reject the dissent's analysis as legally erroneous or establish a definitively "correct" interpretation of the 2006 CBA—especially since we decline to decide any arbitration question on this appeal. Rather, we explain below that on the record before us, the case law amply supports at least "*an interpretation*" of the 2006 CBA's arbitration clause that favors arbitrability. *AT & T*, 475 U.S. at 650 (emphasis added).

purview of Houston Refining's Benefits Administrative Committee. Rather, the Union alleges that the procedure by which Houston Refining amended the 401(k) Plan violated its obligations *under the 2006 CBA*. The record before us indicates that the Committee is charged only with the "administration" of the 401(k) Plan—including the power to "construe and interpret all Plan terms" and to "determine all controversies relating to Plan administration." Had Union members sought to enforce their rights under the 401(k) Plan, then the Committee could certainly "interpret and apply" that Plan. *Amoco*, 589 F.2d at 164. But Houston Refining has not proffered any evidence showing that the Committee, in the course of administering the 401(k) Plan, can determine whether that Plan was lawfully amended under the 2006 CBA. In fact, Houston Refining has suggested precisely the opposite: Because the 401(k) Plan expressly *permits* the company to make unilateral amendments "at any time and from time to time," the Committee, in carrying out its duty of applying the Plan's terms, would likely never be able to recognize a breach of Article 40 of the 2006 CBA.[34]

Our sister circuits' decisions also support "an interpretation" of the 2006 CBA favoring arbitrability. To be sure, the Third and Seventh Circuits found that arbitration of a benefits-related grievance was unavailable where arbitration clauses covered only disputes over "wages, hours, or working conditions," like the clause here. Higginson Op. at 12. But those decisions turned not on the scope of "wages,"[35] but on the fact that the CBA was not the

---

[34] Houston Refining claims that it has made multiple unilateral changes in the past, and that it and the Union have "never bargained about any such changes." But Houston Refining and the Union indisputably bargained over the terms of the 2006 CBA, and if that CBA was valid, then the Union would seem to have an actionable right *under that CBA*, notwithstanding any past failures to enforce that right.

[35] In fact, those courts concluded that even an arbitration clause covering "wages, hours, or working conditions" is "broad" under *AT & T*, warranting an even stronger presumption of arbitration. *See United Steelworks of Am., AFL-CIO-CLC v. Rohm & Haas*

source of the allegedly violated right.[36] Elsewhere, under arbitration clauses facially broader than the one at issue here, the Fourth and Seventh Circuits concluded that disputes were arbitrable.[37] But other courts, notwithstanding similarly broad clauses, concluded that disputes were *not* arbitrable—again, because the right at issue was protected by a separate benefits grievance procedure.[38]

In sum, *Amoco* and our sister circuits' decisions could be read to stand for this proposition: A dispute is arbitrable if the dispute concerns a direct violation of a right *under the CBA*, rather than a challenge to a determination of an employee's eligibility for benefits *under the benefits plan*. This principle recognizes the importance of the source of the disputed right, and, furthermore, prevents clashes between arbitration and disputes governed by the Employee Retirement Income Security Act ("ERISA"), about which Houston Refining professes to be concerned. *Compare Amoco*, 589 F.2d at 164 (holding dispute over two employees' entitlement to sick pay benefits not arbitrable and explaining that Board of Directors has "right to interpret and apply the [Sickness and Disability Benefits] Plan"), *with Printing Specialties & Paper Products Union Local 680, Graphic Commc'n Int'l Union, AFL-CIO v. Nabisco Brands, Inc.*, 833 F.2d 102, 105 (7th Cir. 1987) (concluding that employee-

---

*Co.*, 522 F.3d 324, 331–32 (3d Cir. 2008); *Printing Specialties & Paper Products Union Local 680, Graphic Commc'n Int'l Union, AFL-CIO v. Nabisco Brands, Inc.*, 833 F.2d 102, 104 (7th Cir. 1987). Our analysis does not depend on this stronger presumption of arbitrability.

[36] *See infra* note 39 and accompanying text.

[37] *See* Higginson Op. at 12 n.5 (citing *Karl Schmidt Unisia, Inc. v. Int'l Union, United Automobile, Aerospace, & Agric. Implement Workers of Am., UAW Local 2357*, 628 F.3d 909, 914–16 (7th Cir. 2010); *E.I. DuPont De Nemours & Co. v. Ampthill Rayon Workers, Inc.*, 290 F. App'x 607, 610–12 (4th Cir. 2008) (unpublished)).

[38] *See Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 258 (6th Cir. 2010) (CBA covering all grievances "arising under or relating to the interpretation of" the CBA); *Bridgestone/Firestone, Inc. v. Local Union No. 998*, 4 F.3d 918, 923 (10th Cir. 1993) (CBA covering disputes over "the interpretation or application of [the CBA] or any local plant Supplementary Agreement").

specific benefits dispute was not arbitrable under clause covering "wages, hours or working conditions," but explaining that CBA violation *would be* arbitrable if Nabisco had violated an "obligation under the [CBA]" that "abrogated the full force and effect of the [Benefits] Plan").[39]

Accordingly, if the 2006 CBA in fact existed, the case law applied to this record—under the presumption of arbitrability—demonstrates that the CBA's arbitration clause is at least "susceptible of" an interpretation that would not bar arbitration of this dispute. *AT & T*, 475 U.S. at 650.[40]

---

[39] Besides our Circuit and the Seventh Circuit, the Sixth, Third, Fourth, and Tenth Circuits have also considered the source of the allegedly violated right. *Compare Anheuser-Busch*, 626 F.3d at 260–63 (holding dispute over individual employee's pension benefits eligibility not arbitrable, despite "broad" arbitration clause under *AT & T*, *id.* at 261, because "the Pension Plan clearly provides a specific mechanism for resolving all grievances related to pension rights," whereby "an individual can make a claim for pension benefits to the plan director," *id.* at 262); *Rohm & Haas*, 522 F.3d at 332–34 ("The employees' right to receive disability benefits . . . *derives from the [Health and Welfare] Plan*," *id.* at 334, where CBA "d[id] not . . . have an article devoted to disability benefits nor [did] it provide any sort of discussion as to the employees' rights to or calculations regarding such benefits," *id.* at 332); *Bridgestone/Firestone*, 4 F.3d at 923 (finding dispute not arbitrable because of "separate structure of the two instruments, [and] the absence of any reference to the Suggestion System in the bargaining agreement"), *with E.I. DuPont de Nemours & Co. v. Ampthill Rayon Workers, Inc.*, 516 F. Supp. 2d 588, 593–94 (E.D. Va. 2007) (rejecting employer's claims of potential arbitration-ERISA conflict), *aff'd* 290 F. App'x 607, 612 (4th Cir. 2008) (unpublished) (holding dispute arbitrable despite potential impact on benefits to employees, given alleged violation of CBA's procedural rules governing benefit plan amendments); *United Steelworkers of Am. v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 132 (6th Cir. 1994) (holding dispute arbitrable given that union's claim was "governed on its face by the [CBA]").

[40] Since we do not decide this arbitrability question today, a more considered district court opinion and developed record could inform a future court's analysis. For instance, the record is spare on the CBA's negotiating history and the Benefits Administrative Committee's authority to apply Article 40 of the 2006 CBA. Regardless of what additional facts and legal arguments are marshalled, Houston Refining cannot carry its burden of overcoming the presumption of arbitrability, *Standard Concrete Prods. Inc. v. Gen. Truck Drivers, Office, Food & Warehouse Union, Local 952*, 353 F.3d 668, 674 (9th Cir. 2003), merely by advancing a reasonable reading of the 2006 CBA. Rather, it must invalidate the Union's interpretation of the CBA's arbitration clause, such that the CBA is "not susceptible of *an interpretation* that covers the asserted dispute." *AT & T*, 475 U.S. at 650 (emphasis added).

No. 13-20384

## V

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings.[41]

---

[41] Judge Jolly and Judge Higginson both conclude that jurisdiction is proper, notwithstanding their differing rationales. *See supra* Part III; Jolly Op. at 1; Higginson Op. Part A. Judge Jolly concurs in the reasoning and holdings in Parts IV and V, while Judge Higginson dissents from both Parts IV and V. *See* Higginson Op. Parts B, C.

E. GRADY JOLLY, Circuit Judge, concurring:

I wholly agree with the conclusions reached by Judge Garza: We have jurisdiction over this case, and the district court erred in failing to decide the arbitrability question. I write separately, however, because Judge Garza's jurisdictional analysis is, in my opinion, quite troublesome.

I agree with Judge Garza that we are bound by *Alexander v. Int'l Union of Operating Eng'rs, AFL-CIO* to view the existence of a contract under section 301 as a jurisdictional requirement. 624 F.2d 1235 (5th Cir. 1980). Judge Garza, however, reads *Alexander* to require only that jurisdiction be alleged; that is, he would hold that "[a]n allegation of a labor contract violation is sufficient" to grant jurisdiction that effectively exists thereafter and cannot be challenged. Judge Garza Op. at p. 9. Of course, jurisdiction can be challenged at any time. I recognize that the jurisdictional analysis under section 301 has been complicated by several subsequent Supreme Court cases, but if, as both Judge Garza and I agree, *Alexander* is still controlling law in the Fifth Circuit, the holding that a mere allegation of jurisdiction cannot be disturbed by a meritorious challenge is bewildering.

*Alexander* holds that "jurisdiction [under section 301] depends on whether there is a contract . . . ." *Alexander*, 624 F.2d at 1238. I do not see how this statement can be read as indicating anything other than that the existence of a contract is a necessary jurisdictional fact. As with any other jurisdictional fact, this rule requires that if one of the parties challenges the existence of the contract, the district court must determine whether jurisdiction is satisfied under the Rule 12(b)(1) standard. Judge Garza attempts to escape this conclusion by noting that *Alexander* did not "require factual proof of a labor contract's existence." Judge Garza Op. at p. 8. This observation, although true at the initial pleading stage, is irrelevant to our

analysis because the existence of a contract was not disputed in *Alexander*. Thus, nothing more can be taken from this observation than the uncontroversial proposition that alleged jurisdictional facts may be accepted as true if unchallenged. It does not speak to the situation before this panel; the Union alleged a violation of the CBA, and Houston Refining is contesting the existence of that CBA. Thus, that *Alexander* did not itself require factual proof of the existence of a contract provides no guidance here, whereas its statement that "jurisdiction depends on whether there is a contract" speaks directly to this point. *Alexander*, 624 F.2d at 1238.

Judge Garza also relies on *Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. United Auto., Aerospace & Agric. Implement Workers of Am., Int'l Union* for his conclusion that allegations of jurisdiction are sufficient to provide jurisdiction under section 301. 523 U.S. 653 (1998). But *Textron* also holds that a contract is a jurisdictional requirement under section 301. *Id.* at 656. Judge Garza, however, rather relies on *Textron*'s statement that section 301 "erects a gateway through which parties may pass into federal court." *Id.* at 658. *Textron* goes on to say that "if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may" adjudicate that defense. *Id.* From his chosen statements, Judge Garza concludes that "*Textron* thus teaches that an '*alleged* violation' satisfies section 301(a)'s jurisdictional requirement." Judge Garza Op. at p. 10 (emphasis in original). But *Textron* only says that an allegation of jurisdiction promises a temporary entry but not a permanent residence in federal court. No statement in *Textron* prevents the court from hearing and ruling on a jurisdictional challenge brought under Rule 12(b)(1), alleging and demonstrating that there is no subject matter jurisdiction because there is no section 301 contract in existence for the court to address.

I would read *Alexander* and *Textron* together in the following way: First, there can be no dispute that a party must sufficiently allege jurisdiction in order to get in the door of the federal court. As *Textron* puts it, in order to enter the "gateway through which parties may pass into federal court," the plaintiff must, at a bare minimum, allege a covered contract and the violation thereof. *Textron*, 523 U.S. at 658. If the defendant disputes the existence of a contract, *Alexander* requires that the court, pursuant to its "jurisdiction to determine its own jurisdiction," determine whether a contract exists so as to secure subject matter jurisdiction. *In re McBryde*, 120 F.3d 519, 522 (5th Cir. 1997) ("[I]t is axiomatic that this court always has jurisdiction to determine its own jurisdiction."). When the complaint alleges a violation of the contract, but the district court determines that at the time of the alleged violation, there was no contract, the court must dismiss the complaint for lack of subject matter jurisdiction.

If after the plaintiff alleges a contract violation, the defendant argues either (1) that no violation occurred, or (2) that the underlying contract is voidable (as opposed to void) for some reason, these determinations are properly left for the merits stage. *Textron*, 523 U.S. at 658.

Despite its statements to the contrary, Judge Garza's opinion treats the existence of a contract under section 301 as only an element of the claim rather than as a jurisdictional requirement. Although it does not say so expressly, the opinion surely suggests a holding that the jurisdictional facts at issue in a section 301 case are subject to the simple Rule 12(b)(6) dismissal standard, under which courts assume that all properly pleaded factual allegations are true. I am aware of no factual jurisdictional requirement that can be permanently settled by a bare allegation when jurisdiction is challenged. Instead, when subject matter jurisdiction is meritoriously challenged, the more stringent Rule 12(b)(1) standard is applied, and the court decides disputed

jurisdictional facts; it does not blithely assume allegations of jurisdiction as true. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) ("The unique power of district courts to make factual findings which are decisive of jurisdiction is, therefore, not disputed.").

As Judge Garza's opinion points out, many circuits have abandoned earlier views that the existence of a contract under section 301 is a jurisdictional requirement. I agree, however, with Judge Garza that we cannot abandon *Alexander*'s holding.[1] But we disagree when Judge Garza proceeds to "interpret" *Alexander*'s jurisdictional holding as meaningless by rendering section 301 only a pleading requirement. I would give more respect to *Alexander* and hold that when, as here, the defendant moves to dismiss the section 301 complaint for lack of subject matter jurisdiction by challenging even the existence of the alleged contract, the district court is duty bound to determine whether that contract exists in order to assure itself of its own jurisdiction. *See Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004) (reaffirming that "federal courts are duty-bound to examine the basis of subject matter jurisdiction . . .").

Nonetheless, in the end I find myself in the pleasant company of Judge Garza. We agree in the result. Houston Refining has challenged the existence of the CBA. The Union has also alleged that Houston Refining violated the Settlement Agreement between it and the Union, and Houston Refining raises no challenge to the existence of the Settlement Agreement. Accordingly, because the Union has alleged the violation of that contract violation, and Houston Refining has not challenged the existence of that contract, I would hold that the jurisdictional requirement of section 301 is satisfied. I also agree with Judge Garza's analysis regarding arbitrability, and therefore concur in

---

[1] I thus disagree with the jurisdictional analysis in Judge Higginson's dissent.

Section IV of Judge Garza's opinion.  For these reasons, I respectfully concur in the court's judgment.

No. 13-20384

HIGGINSON, Circuit Judge, concurring in the judgment in part and dissenting in part:

A.

I concur in the conclusion that the district court had subject-matter jurisdiction under § 301(a) of the LMRA, 29 U.S.C. § 185, which empowers federal courts to decide "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ."

Preliminarily, I agree with the Third and Sixth Circuits—following the reasoning of *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006)—that under § 301 the *existence* of a contract is a necessary element of a plaintiff's merits claim, not a threshold requirement which must be proven for subject-matter jurisdiction to exist, allowing parties in controversy access to federal court. *See Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009); *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1007 (6th Cir. 2009).

In *Arbaugh*, 546 U.S. at 503-04, the Supreme Court held that the numerical qualification in Title VII's definition of employer relates to the substantive adequacy of a claim and not to subject-matter jurisdiction. The Court explained: "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 515–16 (internal citations omitted). The Court reasoned that the numerosity requirement appears in the "definitions" section of the statute and that the section "does not speak in jurisdictional terms or refer in any way to the

jurisdiction of the courts." *Id.* at 515. The Court also took measure of the pragmatic consequences of designating an element as jurisdictional so that its existence confers or deprives federal courts of the power even to deal with the subject in dispute. *See id.* at 514–15.

As the Third and Sixth Circuits persuasively have elaborated, several considerations compel the same conclusion as to the existence of a contract under § 301. *See Pittsburgh Mack Sales*, 580 F.3d at 189–90; *Winnett*, 553 F.3d at 1004–1007.[1] First, the text of § 301(a) does not explicitly state that it is a limitation on subject-matter jurisdiction. *See* 129 U.S.C. § 185(a). Indeed, the language at issue appears in the subsection entitled "Venue, amount, and citizenship." *Id.* The only jurisdictional reference in this subsection describes a limit on personal jurisdiction and does not appear to modify the elements of the claim. *See id.* Second, there is a separate subsection explicitly entitled "Jurisdiction," which sets forth exact limitations on personal jurisdiction. *See id.* at (c). Finally, all of the elements of the claim appear in subsection (a), yet the statute does not elaborate that some of the elements of the claim have subject-matter jurisdictional consequences whereas others do not. *See Winnett*,

---

[1] The Eighth Circuit has maintained course after *Arbaugh*, continuing to conclude that the existence of a contract is threshold requirement for subject-matter jurisdiction under § 301. *See ABF Freight System, Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 961–63 (8th Cir. 2011) (agreeing with defendants' argument "that the existence (or violation) of a collective-bargaining agreement is a jurisdictional requirement under section 301(a)"). For the reasons articulated above by the Third and Sixth Circuits, and above all the Supreme Court's unanimous and clarifying decision in *Arbaugh*, I disagree. Furthermore, I would add that our court thirty-four years ago in *Alexander v. Int'l Union of Operating Eng'rs*, 624 F.2d 1235, 1238 (5th Cir. 1980), did not elaborate reasoning determinative of the issue before us when we made the following statement: "As the language in section 301 makes clear, jurisdiction depends on whether there is a contract between an employer and a labor organization or between two labor organizations." That observation was not essential to our court's holding in *Alexander*, nor is it instructively precise in light of *Arbaugh*. The issue in *Alexander* was whether the union's international constitution constituted a contract within the meaning of § 301, *id.*, whereas here there is no question that a CBA is a contract within the meaning of § 301.

553 F.3d at 1006. If the *existence* of a contract is a threshold jurisdictional requirement, then so too would be the *existence* of a violation, such that the district court would have to decide whether the contract actually had been violated before reaching the merits of the case. I am similarly "reluctant to conclude that Congress intended to create a cause of action that has no non-jurisdictional elements." *Winnett*, 553 F.3d at 1006.

Finally, the practical oddities of designating the existence of a contract a threshold jurisdictional requirement are apparent here, as they were also in *Arbaugh*, 546 U.S. at 514–15. It was Houston Refining that brought suit to vacate the arbitral award. As the plaintiff, Houston Refining *invoked* subject-matter jurisdiction under § 301 and 28 U.S.C. § 1331. Houston Refining now argues that the existence of a contract is a jurisdictional requirement (to obtain *de novo* review of arbitrability by the district court) yet simultaneously asserts that there was no CBA in effect at the time the Union filed its grievance. However, if the district court were to find that no CBA existed (as Houston Refining urges), then under this rationale it would have to dismiss the suit for lack of subject-matter jurisdiction and would be precluded from reviewing the arbitral award altogether.[2]

---

[2] Allegations in a counterclaim do not suffice to establish federal-court jurisdiction where the basis for federal jurisdiction does not appear on the face of the plaintiff's complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–98 (1987) (explaining that the well-pleaded complaint rule applies to suits under § 301 and that "the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule . . ."); *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric.*, 523 U.S. 653, 659 (1998) (reiterating that the well-pleaded complaint rule bars invoking § 1331 jurisdiction by anticipating a federal defense in a suit asserting a nonfederal claim) (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)). Hence, the LMRA cases discuss only the adequacy of a plaintiff's complaint. *See Textron*, 523 U.S. at 661 ("Because the [plaintiff's] complaint alleges no violation of the collective-bargaining agreement . . ."); *Alexander*, 624 F.2d at 1238 ("Plaintiff employees sough to invoke the district court's jurisdiction . . . Plaintiffs contended that violation by the respective unions . . . ."). None indicates that the allegations in a counterclaim can establish jurisdiction under § 301. *Cf. Textron*, 523 U.S. at 658–60 (rejecting

No. 13-20384

The Third and Sixth Circuit decisions adhere to the Supreme Court's instruction in *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 658 (1998), that § 301 "erects a gateway through which parties may pass into federal court," even as they do not require anticipatory proof of the elements of a § 301 claim in order to enter into federal court. *Pittsburgh Mack Sales*, 580 F.3d at 189–90; *Winnett*, 553 F.3d at 1006. Those Circuits only did not delve further into explication of what is both necessary and sufficient to support threshold subject-matter jurisdiction under § 301. Sufficient for this case, established case law settles that a suit by a plaintiff to vacate an arbitral decision finding that the plaintiff violated a CBA is cognizable under § 301, without requiring the plaintiff separately to allege in district court that either it or the defendant violated the relevant CBA. *See Brown v. Witco Corp.*, 340 F.3d 209, 218 (5th Cir. 2003) ("When an arbitration decision arises from the terms of the collective bargaining agreement, judicial review of the arbitration award is authorized not by the FAA but by the terms of Section 301 of the Labor Management Relations Act.") (citing *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 41 n.9, (1987); *Int'l Chem. Workers Union, Local 683C v. Columbian Chems. Co.*, 331 F.3d 491, 493–94 (5th Cir. 2003)); *see also, e.g.*, *E.I. DuPont de Nemours and Co. v. Local 900 of the Int'l Chem. Workers Union*, 968 F.2d 456, 458 (5th Cir. 1992) (suit by employer to vacate arbitral award under § 301); *N. New England Tel. Operations Co. LLC v. Local 2327, Int'l Bhd. of Elec. Workers*, 735 F.3d 15, 20 (1st Cir. 2013) (same); *Akers Nat'l Roll Co. v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv.*

Union's argument that its declaratory-judgment action should proceed because it was a defense to what it anticipated would be employer's claim that Union violated the CBA). Houston Refining properly invoked subject-matter jurisdiction under both § 301 and 28 U.S.C. § 1331; § 301 provides the federal question, and the well-pleaded complaint rule applies. *See Caterpillar*, 482 U.S. at 398.

40

*Workers Int'l Union*, 712 F.3d 155 (3d Cir. 2013) (same); *accord Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (citing *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957) (explaining that § 301 "provides federal-court jurisdiction over controversies involving collective-bargaining agreements")); *Caterpillar,* 482 U.S. at 394 ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement.") (internal quotation marks and citation omitted).

That approach is compatible with *Textron,* which involved the different posture of a *declaratory-judgment plaintiff* that had not alleged the violation of a contract and therefore had not "present[ed] a case or controversy giving [it] access to federal courts." *Textron,* 523 U.S. at 660. The instruction of *Textron* is that a suit properly through the gateway into federal court under § 301 is "one filed *because a contract has been violated." Id.* at 657 (emphasis in original). Houston Refining's suit in federal court indisputably was filed because the arbitrator concluded that Houston Refining had violated its CBA with the Union. Were *Textron* to establish the further special pleading rule that in every case a plaintiff must *expressly* allege that either it or the defendant violated a contract, I do not perceive that that formalistic rule would be met in this very case. No matter how its language is framed, Houston Refining's complaint does not allege that either it or the Union violated the CBA. Instead, Houston Refining's complaint states only that the Union filed a grievance alleging that Houston Refining violated the CBA and that the arbitrator exceeded his authority in agreeing with the Union. Whereas, as noted earlier, allegations in a counterclaim cannot establish federal-court jurisdiction, Houston Refining's failure to expressly allege that either it or the Union violated the CBA is not determinative. That is because, again, a suit to

vacate an arbitral award is cognizable under § 301. *See, e.g.*, *E.I. DuPont*, 968 F.2d at 458.

Consider the instant facts. The parties made all of their arguments, about both the arbitrability of the grievance and the alleged violation of the CBA, to the arbitrator. The arbitrator decided that a CBA was in effect, analyzed the terms of the CBA, concluded that Houston Refining indeed violated those terms, and fashioned an award accordingly. Houston Refining then filed a complaint to vacate the arbitral decision that involved and arose from the terms of the disputed CBA, alleging that the arbitrator exceeded his authority in concluding that Houston Refining's suspension of 401(k) contributions violated the CBA. This is a suit to vacate an arbitral award, filed because a contract (as declared by the arbitral award) was violated, which I would hold is sufficient to pass through the gateway of § 301 into federal court. *See, e.g.*, *E.I. DuPont*, 968 F.2d at 458.

Because I agree that the district court had subject-matter jurisdiction to entertain this suit, the position all parties took heretofore, I concur in the outcome of Part III.A.

B.

I dissent, however, from the majority's conclusion that the parties did not clearly and unmistakably agree to submit the question of arbitrability to the arbitrator. The parties dispute whether the Settlement Agreement, into which they entered pursuant to litigation in bankruptcy court, evinces a clear and unmistakable agreement to arbitrate arbitrability. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995); *ConocoPhillips v. Local 13-0555 United Steelworkers Int'l Union*, 741 F.3d 627, 630 (5th Cir. 2014). The context of the agreement is significant. The Union filed in bankruptcy court a motion to compel Houston Refining to arbitrate its grievance, which alleged that Houston Refining violated the terms of the parties' CBA when it unilaterally

suspended its 401(k) contributions. In response, Houston Refining raised all arguments against arbitrability, including that there was no CBA in effect at the time of the suspension, that the grievance was filed under a CBA that did not exist, and that, even if a CBA was in effect, it did not cover the grievance. The parties then entered into the Settlement Agreement, which provides:

> 1. The parties agree to proceed to arbitration with the grievances that are the subject of the Actions expeditiously and in compliance with the arbitration procedures, including the time frames, in the applicable collective bargaining agreements. . . .

> 4. At arbitration, the parties shall reserve all rights to present any and all arguments and advance any and all defenses to them including, without limitation, arguments concerning whether or not an applicable collective bargaining agreement was in effect at the time that a particular grievance arose.

The Settlement Agreement is a concise, explicit agreement to arbitrate and defines the claims that will be subject to arbitration to include the subject of the bankruptcy proceedings and all relevant arguments and defenses, including but not limited to the existence of a CBA. The majority perceives ambiguity in the word "reserve," but the Agreement states that the parties reserve the right to make those arguments *at arbitration*. The majority notes further that Houston Refining raises other arbitrability arguments besides the lack of a CBA. But Houston Refining raised all of its arbitrability arguments in the bankruptcy proceedings, and the Agreement states that the parties reserve the right to argue at arbitration *all arguments and defenses* to that action, including but not limited to the existence of a CBA. There would have been no need to stipulate to that fact in advance if the parties did not intend the arbitrator to decide those questions.

In *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010), the Supreme Court considered a delegation clause in an arbitration agreement, which submitted to arbitration certain threshold questions of arbitrability. The

Court held that where such a clause delegates to the arbitrator a dispute relating to the arbitration agreement's enforceability, validity, or scope, that is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See id.*; *see also Petrofac, Inc. v. DYNMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (concluding that parties agreed to arbitrate arbitrability where agreement expressly incorporated the AAA Rules, which state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement") (internal quotation marks omitted); *Allen v. Regions Bank*, 389 F. App'x 441, 446 (5th Cir. 2010) (concluding that parties agreed to arbitrate arbitrability where agreement stated that "[a]ny dispute regarding whether a particular controversy is subject to arbitration . . . shall be decided by the arbitrator(s)"). Agreeing with the district court, I would hold that the same is true with the Settlement Agreement here.

Houston Refining argues that the Settlement Agreement lays out "matters of *what* will occur, not *whether* it will bind each side." In the above cases, however, the agreements did not state that the parties would be bound by the arbitrators' decisions, only that the arbitrators would decide the questions. Those cases do not require "magic words" to establish that the parties agreed to arbitrate arbitrability. The facts of this case indicate that these two sophisticated parties agreed, after making their arguments relating to arbitrability in bankruptcy court, to submit that dispute to arbitration. Therefore, I would hold that the parties clearly and unmistakably agreed to arbitrate arbitrability and thus that the district court properly applied deferential review to the arbitrator's decision on arbitrability. See *First Options*, 514 U.S. at 943; *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2005).

44

No. 13-20384

C.

I would hold further, however, that even under that deferential standard of review, the arbitrator exceeded his authority in concluding that the Union's grievance was arbitrable. The grievance alleged that Houston Refining violated the CBA when it unilaterally suspended its matching contributions to the 401(k) Plan. Houston Refining argues that the CBA provides for arbitration of grievances regarding only "wages, hours, or working conditions" and that the company's 401(k) contributions do not constitute "wages" within the meaning of the CBA.

Where "an arbitration decision arises from the terms of a CBA, judicial review is narrowly limited. Courts should afford great deference to arbitral awards." *Beaird*, 404 F.3d at 944. "As long as the arbitrator's decision draws its essence from the collective bargaining agreement and the arbitrator is not fashioning his own brand of industrial justice, the award cannot be set aside." *Resolution Performance, Resolution Performance Prods., LLC v. Paper Allied Indus. Chem. and Energy Workers Int'l Union, Local 4-1201*, 480 F.3d 760, 764–65 (5th Cir. 2007) (internal quotation marks and citation omitted). However, "[i]t is well-established that courts may set aside awards when the arbitrator exceeds his contractual mandate by acting contrary to express contractual provisions." *Beaird*, 404 F.3d at 946. Thus, "[a]lthough we accord an arbitrator's decision considerable deference regarding the merits of the controversy, the CBA circumscribes his jurisdiction." *Bruce Hardwood Floors, Div. of Triangle Pac. Corp. v. UBC, So. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 452 (5th Cir. 1997). This is the appropriate deferential standard of review afforded to a question of arbitrability that the parties agreed to submit to the arbitrator. *See First Options*, 514 U.S. at 943 ("Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about that

No. 13-20384

matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate.").[3]

Under our circuit's and other circuits' case law, I would hold that the term "wages" in this CBA is not broad enough to encompass Houston Refining's suspension of 401(k) contributions.[4] Article 30 of the CBA provides that "[a] grievance is defined to be any difference regarding *wages, hours, or working conditions* between the parties or between the Company and an employee covered by this Agreement" (emphasis added). Article 14, entitled "Wage Rates and Pay," nowhere references the 401(k) Plan. Appendix C, entitled "Wage Rates," similarly refers only to base rates of pay. Articles 14 and 30, which describe wages and the grievance procedure, are separate from and precede

---

[3] The question of whether the parties agreed to arbitrate arbitrability determines what level of deference the court affords to the arbitrator's decision. *See First Options*, 514 U.S. at 943. Accordingly, the majority's challenge that my approach conducts a *de novo* or independent review of the CBA is incorrect; rather, because I conclude that the parties clearly agreed to submit the entirety of this dispute, including the question of whether this dispute falls within the terms of the CBA, to the arbitrator, the well-established deferential standard of review applies to the arbitrator's determination of that question. *See Beaird*, 404 F.3d at 944. The Second Circuit's decision in *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 72 (2d Cir. 2012), is consistent with this approach, as there the district court erred because it deferred to the arbitrator's arbitrability determination "without first finding clear and unmistakable evidence of the parties' intent to submit that question arbitration." The Second Circuit nonetheless reiterated the rule that "a party resisting confirmation of an arbitration award is entitled to an independent review of a question of arbitrability *unless there is clear and unmistakable evidence that the parties agreed to arbitrate that question.*" *Id.* at 71 (emphasis added).

[4] That the relevant cases review the scope of the CBAs at issue *de novo* is not determinative here because that standard also is deferential: "Where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commcn's Workers of Am.*, 475 U.S. 643, 650 (1986). The cases nonetheless conclude, however, that there is "no ambiguity as to the intent" of the CBAs to exclude the grievances from arbitration. *See, e.g.*, *Local Union No. 4-449, Oil, Chem. and Atomic Workers Union v. Amoco Chem. Corp.*, 589 F.2d 162, 163 (5th Cir. 1979) (per curiam). That conclusion supports equally a finding that here the arbitrator acted contrary to express contractual provisions in finding this dispute to be arbitrable. *See Beaird*, 404 F.3d at 946. Finally, because this issue turns on "a matter of law which requires the interpretation of" the CBA, *see Amoco*, 589 F.2d. at 163, further factual development is unnecessary.

Article 40, which contains the provision that is the subject of the instant grievance:

> During the term of this Agreement, the Company will provide advance notice of proposed changes to the benefit plans covered by the Agreement. . . . A reasonable time period will be provided for the Union to elect inclusion in or exclusion from the amended benefits plan. If the Union elects exclusion, represented employees shall continue participation in the existing, unchanged benefits plan for the term of the Collective Bargaining Agreement.

Significantly, whereas Article 40 goes on to explicitly apply the grievance procedure to the Sickness and Accident Disability Plan, it does not do so for the other listed benefits plans, including the 401(k) Plan. Accordingly, the 401(k) provision at issue contains no mention of grievance or arbitration.

Houston Refining has a separate 401(k) Plan with its own provisions for review of benefits. The 401(k) Plan distinguishes company contributions from compensation, including "wages." It expressly provides that

> the Benefits Administrative Committee has exclusive responsibility for the general Plan administration, according to the Plan terms and provisions, and shall have all discretion and powers necessary to accomplish its purposes, including, without limit, the right, power, authority and duty . . . to construe and interpret all Plan terms, provisions, conditions and limits and the Benefits Administrative Committee's construction and interpretation shall be final and conclusive on all persons or entities . . . to determine all controversies relating to Plan administration . . . to make a determination on any person's right to a benefit and to afford any person dissatisfied with that determination the right to a full and fair review.

It further provides that it "may be amended at any time," that the Plan Sponsor "reserves the right to terminate it at any time," and that it does not impose an obligation to pay benefits other than any potential ERISA liability.

In *Local Union No. 4-449, Oil, Chem. and Atomic Workers Union v. Amoco Chem. Corp.*, 589 F.2d 162, 163 (5th Cir. 1979) (per curiam), the union sought to compel arbitration under a CBA of the company's denial of sick-pay

benefits. The CBA provided: "Benefits with respect to sickness and disability shall be payable in accordance with the Company's Sickness and Disability Benefits Plan as presently in effect except that an employee will be paid holiday pay in place of sick leave pay for a holiday falling on a normally scheduled day of work, but which normally would not have been worked by the employee." *Id.* The Benefits Plan stated: "The decision of the Board of Directors of the Company on any matter concerning the administration of this plan as a whole or as applied to any specific case Shall be final and the Board reserves the right to interpret, apply, amend or revoke this Plan at any time." *Id.* We concluded that the CBA and the benefits plan together clearly excluded arbitration for grievances concerning sick-pay benefits. *Id.* at 164. I would apply the same logic and analysis here.

Other circuits have come to the same conclusion on similar facts. *See United Steelworkers of Am. v. Rohm and Haas Co.*, 522 F.3d 324, 326-27 (3d Cir. 2008) (concluding that dispute over ERISA benefits was not arbitrable where CBA grievance clause covered only "wages, hours, and working conditions" and CBA referenced the disability-benefits plan and vice versa but no other overlap existed); *Bridgestone/Firestone, Inc. v. Local Union No. 998, United Rubber, Cork, Linoleum, and Plastic Workers of Am.*, 4 F.3d 918, 922-23 (10th Cir. 1993) (concluding that dispute over employee-suggestion system was not arbitrable where CBA grievance clause covered only interpretation or application of CBA, suggestion system had its own agreement and review process, and CBA did not reference suggestion system); *Printing Specialties and Paper Prods. Union Local 680, Graphic Commc'n Int'l Union v. Nabisco Brands, Inc.*, 833 F.2d 102, 103–05 (7th Cir. 1987) (concluding that dispute over pension benefits was not arbitrable where grievance clause covered only "wages, hours, and working conditions," pension plan stated that pension committee would be responsible for its administration, CBA contained only one

reference to plan, and bargaining history suggested purpose to exclude pension claims from arbitration).[5] In all of these cases, the disputes concerned alleged violations of rights to benefits created in the CBAs, yet the courts still concluded that the disputes were not arbitrable, hence the cases are not distinguishable on the ground that the disputes concerned only employee eligibility under the separate benefits plans. *See, e.g.*, *Printing Specialties*, 833 F.2d at 103; *Amoco*, 589 F.2d at 163.

Here, the CBA grievance clause covers only wages, hours, or working conditions. Nowhere does the CBA's discussion of "wages" mention 401(k) benefits. The CBA references Houston Refining's duty to notice proposed changes to the 401(k) Plan, but whereas it explicitly applies the grievance procedure to another listed benefits plan, it does not do so for the 401(k) Plan. The 401(k) Plan provides for independent administration of benefits and resolution of disputes by a separate committee. Houston Refining made unilateral changes to the 401(K) Plan several times prior to this suspension. Thus, "there appears to be no ambiguity as to the intent of the [CBA] to exclude grievances dealing with [401(k)] benefits from arbitration," *Amoco*, 589 F.2d at 163–64, and I would hold that the arbitrator "exceed[ed] his contractual mandate by acting contrary to express contractual provisions." *Beaird*, 404 F.3d at 946.

---

[5] The cases in which courts have concluded that similar disputes *are* arbitrable are consistent as well because they involved contrastingly broad arbitration clauses. *See Karl Schmidt Unisia, Inc. v. UAW Local 2357*, 628 F.3d 909, 914–16 (7th Cir. 2010) (concluding that dispute over employee-incentive program was arbitrable where CBA grievance clause covered "any violation of this agreement"); *E.I. DuPont De Nemours & Co. v. Ampthill Rayon Workers, Inc.*, 290 F. App'x 607, 610–12 (4th Cir. 2008) (unpublished) (concluding that dispute over ERISA benefits plan was arbitrable where CBA grievance clause covered "any question as to the interpretation of the [CBA] or as to any alleged violation of the [CBA]").

No. 13-20384

For the foregoing reasons, I would reverse and remand with instructions to vacate the arbitral award. I respectfully concur in the judgment in part and dissent in part.